## TURNBULL WAGON CO. v. LINTHICUM CARRIAGE CO. et al.

(Circuit Court, N. D. Ohio, W. D. February 20, 1897.)

1. REMOVAL OF CAUSE—SEPARABLE ACTION.

A bill by a creditor to enjoin an execution sale of the insolvent debtor's property, set aside the levies, and subject the property to the claims of all the creditors pro rata, is not a separable action within the removal acts.

2. SAME—LOCAL PREJUDICE.

Local prejudice justifying the removal of a suit to enjoin an execution sale of the property of an insolvent company, and subject it to the claims of all the creditors, is not shown by an affidavit alleging that the newspapers of the county have denounced the company for alleged fraudulent dealings with its property; that the common pleas judge, on hearing a motion for the appointment of a receiver, stated that he "would see" that defendants did not take the property out of the county; and that the opposing lawyers referred to them in abusive terms.

Some time in the fall of 1896, Story & Bunnell, of Baltimore, Md., had judgments entered on certain cognovit notes against the Linthicum Carriage Company, of Defiance, Ohio, in the court of common pleas of Marion county, Ohio, and on these judgments levies were made on the property of the corporation at Defiance. Subsequent judgments were taken in favor of the First National Bank of Defiance and other parties, and levies followed. The property of the carriage company was advertised for sale under these levies, pending which the Turnbull Wagon Company, of Defiance, instituted suit in the court of common pleas of Defiance county against the execution creditors and the sheriff of said county on behalf of itself and all other creditors who (under the statute of Ohio) might come in and join in the prosecution of the suit, to enjoin the sale of the property, set the levies aside, and subject the property of the insolvent carriage company to satisfy the claims of the creditors pro rata. It was also sought by the plaintiff to subject certain unpaid subscriptions of Story & Bunnell, and possibly their stock liability

in the carriage company, to pay the claims of the creditors.    To the petition a demurrer was filed on behalf of the sheriff (Story & Bunnell not appearing in name), by Brumbach & Thatcher, of Toledo, and John W. Winn, of Defiance, attorneys.    Harris & Cameron appeared as attorneys for the plaintiff and for the First National Bank.    Henry Newbegin appeared for John F. Deatrick & Sons and other creditors by cross petition.    Other creditors were represented severally by N. G. Johnston, S. T. Sutphen, and B. B. Kingsbury, attorneys, of Defiance.    On hearing of the demurrer, it was overruled by the court of common pleas.    Immediately thereafter, Thatcher & Winn asked the court to have certain banks of Baltimore made parties to the suit, as parties in interest, without stating what the interest was, and the order was made by consent, with leave in the future to file a cross petition in the case.    Soon after, and before filing their cross petition, or otherwise pleading in the case, the new parties, the Baltimore banks, filed a petition and bond for removal of the case to the United States circuit court (at Toledo), on the ground of diverse citizenship and a separate controversy. The right to remove was contested by Harris & Cameron and by Henry Newbegin, attorneys, and on hearing by the court of common pleas the order of removal was refused, on the ground that there was no separable controversy in the case; the court not passing on the other questions argued.    Thatcher & Winn, as attorneys for the Baltimore banks, now applied to the circuit court of Defiance county for a writ of mandamus against Judge Snook, the judge of the court of common pleas, to compel him to make the order of removal.    The state circuit court overruled this motion, refusing to entertain jurisdiction by writ of mandamus, to review the order of the lower court.    To same effect is In re Atlantic City R. Co., 164 U. S. 633, 17 Sup. Ct. 208.    In this state of the case the attorneys for the Baltimore banks filed a transcript of the record in the United States circuit court.    Harris & Cameron and Henry Newbegin, on behalf of their clients, followed the case there, and moved to remand, and filed briefs to sustain their motion.    After this Thatcher & Winn, on behalf of the Baltimore banks, filed their petition and bond in the United States circuit court to transfer the case there for hearing on the ground of local prejudice.

Harris & Cameron, for plaintiff.

Henry Newbegin, for certain cross petitioners on the motion to remand.

Orville S. Brumback and Charles A. Thatcher, for defendants.

HAMMOND, J.    The motion of the plaintiff to remand this case to the state court for want of jurisdiction must be granted.    The case falls within the category of Deposit Co. v. Huntington, 117 U. S. 280, 6 Sup. Ct. 733, and not that of Barney v. Latham, 103 U. S. 205.    In the first of these cases the supreme court of the United States, in an opinion by Mr. Chief Justice Waite, held that a creditors' bill to subject incumbered property to the payment of the creditors' judgment by a sale and distribution of the proceeds among lienholders according to their respective priorities is not a divisible action, and therefore is

not removable under the removal acts. It is, he says, but a single cause of action; and the fact that each defendant may have a separate defense does not create a separate controversy, within the meaning of the removal acts. In that case the purpose of the bill was precisely the same as in this, and the cases are substantially alike in all respects. There a nonresident mortgage creditor, claiming a first lien, sought to remove the cause, and the court said that the answer and cross bill claiming to have the property sold and applied to that mortgage as a prior lien was only an incident to the suit of the creditor, for the reason that the creditor wished to have property subjected not alone to his own or to the mortgage debt, but that he wanted complete relief that would secure a sale of the entire property, free of all incumbrances, and a division of the proceeds according to the adjusted equities of all the parties. Here the defendants asking removal (the two Baltimore banks) hold, by assignment, the cognovit judgment notes given to the defendants Story and Bunnell, or the firm of Story & Bunnell. It seems that neither of these defendants, original or substituted by assignment, had filed any answer or cross bill at the time the petition for removal was filed; but enough appears to see that the relief they must ask in some form will be precisely the same as that asked by the removing petitioner in the case of Deposit Co. v. Huntington, supra. They claim a lien prior to all others, through older judgments, where, as in the Deposit Company Case, the oldest lien was a mortgage; but this can make no difference whatever. The one case seems to be a precise precedent for the other.

It is true that in this case an additional relief is asked against Story & Bunnell, the assignors of the Baltimore banks, the removing petitioners, to which relief, if granted, the said assignees must respond, in the sense, at least, that their judgments cannot be paid until all equitable rights against Story & Bunnell are adjudicated and adjusted. If they owe, under the statutes of Ohio, for additional assessments of their stock, it is altogether probable that such assessments may be equitably set off against the judgments in the hands of their assignees. But, if so, both the claim for the amount of assessments due and the claim to have them set off against the judgments are incidental to the main purposes of the bill, just as much as in the case cited in the supreme court of the United States the claim of a prior lien was incidental. It is not necessary to decide here whether any or what equities exist, but none can exist which involve priorities of lien, liability to respond to demand for assessments and set-off, that can be foreign and separable from the general purpose to administer this insolvent firm in a general bill that shall bring into one suit all who are interested in the assets of the concern, and all who have any claims against it. Everything, properly speaking, which concerns the assets as a claim against them, is but a graft upon the original and main relief. This would be so under the general equity law for the administration of the assets of an insolvent debtor, and particularly so under the statutory provisions for the convenient administration of the assets of an insolvent corporation. Many cases could be cited, which

have been decided under the removal acts, to this effect, but the one already mentioned is so complete a precedent that it is all-sufficient.

Since the original petition was filed, another petition is filed here, asking for removal on the ground of local prejudice, which the court declines to grant, upon the ground that the proof of local prejudice is not at all satisfactory. It depends mainly upon the affidavits of Thatcher & Winn, who are lawyers in the case; and the counter affidavits filed by the plaintiff contradict every important, or even plausible, allegation of the defendants' affidavits. It must be remembered that this case is not tried by a jury, but by an equity judge. Recognizing this, the affiants for the defendants seek to involve the common pleas judge by averring that on a certain occasion, when a motion was heard for the appointment of the receiver, in reply to uncomplimentary remarks made by a lawyer about the defendants he said: "We will see to it that they are not allowed to carry this property out of the county." Other witnesses deny that any such remark was made by the judge, and say that he only stated, in reply to what the lawyer said, that he would see that the rights of all the parties should be protected. Even if the judge said what the affidavits affirm, it is the most trivial support for any application to remove the case on the ground of local prejudice, or even bias on his part. It was his duty to see that they should not carry the property out of the county, pending this litigation, and does not at all imply, whatever may be said in criticism of it, that he had any bias against the defendants. The affidavits also say that the lawyer mentioned called the defendants "rascals," etc. But surely it has not come to this, that the federal removal act proceeds upon the idea of removing cases because of uncomplimentary or abusive remarks by lawyers about their adversaries in litigation. Much is said in the affidavits about a newspaper publication in the county, denouncing the defendants for their alleged fraudulent transactions in relation to the management of their company. But again, it has not come to this, that the federal courts will remove cases merely because of newspaper articles denunciatory of individuals. These are the most formidable allegations in the affidavits. Taken altogether, they may show that the failure of this company and this litigation has not created probably more than ordinary excitement in the community where the corporation carried on its business. It is not to be denied that public opinion may be so inflamed, even as against individuals, that such local prejudice would exist as might justify the removal of a case to be tried before an equity judge; but such an inflammatory state of public opinion should be most extraordinary, and far more intense than anything shown by these affidavits, even if they were not contradicted by equally weighty affidavits on the other side. Detroit v. Detroit City Ry. Co., 54 Fed. 1.

Merely because a judge is to be elected by the people is no reason why this removal act of congress should be enlarged and extended to remedy any evil that may be thought to exist in that regard, and the averments in these affidavits in that behalf are not

to be taken as justifying such an extension and use of the act of congress. The case in Detroit, above cited, does not decide any such doctrine, but only where mob violence and public antagonism about public institutions, like railroads and such like, may affect an electoral populace, the fact may be taken to prove local prejudice.

There are reasons arising out of the comity of the federal and state courts towards each other which might justify, if they do not demand, that this court should refuse to exercise the jurisdiction, even if it existed in a case like this. Often the courts do decline, from mere considerations of comity, to exercise a jurisdiction that technically they possess, and this is nearly always so where the res is in possession of another court. It is only under the most extraordinary circumstances that such a disposition of the court having control over the property should take place, although the power exists. Therefore, if there were here a separable controversy, inasmuch as the state court, having possession of the property by its receiver, and proceeding to administer the assets, has denied our jurisdiction by refusing to approve the bond and sanction the removal, it might be wise in this court to withhold any action if the motion to remand should be denied until the defendant had established the right of removal through the process of the appellate jurisdiction of the supreme court of the United States over the state court itself. Surely, if that were a wise thing to do, this court should not retain jurisdiction except in the clearest possible case of its existence. When this case is remanded, if the jurisdiction exists in behalf of these defendants, they may vindicate it by an appeal from the state courts to the supreme court of the United states; and, if it be only doubtful, it is better to remit them to that remedy than to retain this jurisdiction at this stage of the proceedings, and engage in a disagreeable conflict of authority with the state courts. Of course, this principle or plan of action should not be allowed when it would amount to the denial of a plain right of removal, which the state court obdurately and perversely refused to sanction, but it should be sufficient to turn the scale in an evenly-balanced case, to say nothing of a doubtful case.

It is not necessary to consider other objections to our jurisdiction that have been taken in the argument, such as that the petition for removal does not affirm the existence of local prejudice in all adjacent counties to which the case might be removed under the laws of Ohio, nor the further provision of the Ohio statutes that another judge may be designated when objection is tenable against the one before whom the case is pending. Whether such considerations as these would affect the question of removal, under the federal statute, we need not inquire. The motion to remand will be allowed, and the petition to remove on the ground of local prejudice will be disallowed. Ordered accordingly.