HINSON MFG. CO. v. WILLIAMS.

(Circuit Court, N. D. Illinois, N. D. March 11, 1898.)

PATENTS FOR INVENTIONS—PATENTABILITY—CAR COUPLER.

The Hinson patent, No. 389,510, for improvement in car couplers, consisting in the use of a spring to reinforce the action of gravity upon the latch, is not void for want of patentable invention.

The bill is to restrain the infringement of letters patent No. 389,510, issued to James A. Hinson for "improvements in car couplers." The

complainant is the owner of letters patent by assignment from Hinson. The invention is described by the patentee as follows:

"My invention relates to car couplers of that type known as 'twin jaws,' in which jaws pivoted in the drawbars interlock to couple the cars, and it has for its object to provide a very simple and durable coupler, of but few parts, which will automatically couple, and which may be uncoupled from the side of the car, at the end, almost instantly and with great ease, and it consists of the parts and combinations of parts hereinafter described and claimed. In the accompanying drawing, forming a part of this specification, Fig. 1 is a perspective view of my improved coupler in position on the end of the car; Fig. 2, a vertical longitudinal section through the drawbar; Fig. 3, a horizontal section on the line, x, x, Fig. 2; Fig. 4, a sideview of the drawbar; Fig. 5, a like view, partly broken away, to show the means for securing the movable jaw to the drawbar; Fig. 6, a detail view, showing a modified arrangement of the latch; Fig. 7, an end front perspective view of the movable jaw; Fig. 8, a perspective view of the movable jaw, looking toward its inner side; Fig. 9, a horizontal section of the line, y, y, Fig. 7; and Fig. 10, a detail view of the end of one of the arms and a block. Similar letters refer to similar parts throughout the several views. A represents the drawbar, which is made hollow, and so connected to the car as to have a limited longitudinal movement, its rear end being cushioned against a spring to deaden the effects of concussion as is customary. At the front end of the drawbar two flaring arms, B, B', the latter being merely a guard arm, are cast between which is a recess, a, to receive the branch b, of the movable jaw, C, as will be explained hereinafter. A hollow offset, c, is also cast, integral with the drawbar, which forms a shoulder to abut against the front beam, D, of the car, as shown in Fig. 1, when the drawbar is driven back. The arm, B, of the drawbar, is cast with the flanges, d, having circular recesses, e, forming in their contiguous faces, and slots, f, entering said recesses from the outer edges of said flanges, for a purpose which will be described hereinafter. On the inner face of the arm, B, at a suitable distance from its end, a wedge-shaped recess or depression, g, is formed to receive the hook-shaped projection, h, on the branch, b, of the movable jaw, C, when the coupling is made. In the lower part of the drawbar, immediately beneath the offset, c, a recess, k, is formed, in which the lower end of the latch, E, is pivoted, as shown in Fig. 2, and a spring, F, having one end bearing against said latch, is adjustably secured in the drawbar in the rear of said latch. The upper end of the latch extends into the hollow offset, c, and is connected to one end of a short chain, I, the other end of said chain being attached to a pin, m, having a collar, n, and an eye, o, cast thereon, said pin passing through an opening in the upper part of the offset, c, to make the connection. The collar, n, prevents the entrance of dirt in the offset. To the eye, o, of the pin, the crank arm, p, of the rod, r, is attached, said rod being suitably attached to the end of said car, so as to be easily turned by its handle, s, to lift the pin, and thus draw the latch backward against the spring, and release the branch, b, of the movable jaw to uncouple. The spring, F, will hold the latch normally in the position shown in Fig. 2, and will throw it back into such position after the latch has been forced back by the branch, b, in coupling, or by the rod, r, in uncoupling, so that the latch will be always in position to lock the branch, b, in place. In Fig. 6, I show the latch, E, provided with a shoulder, t, and pivoted at its upper end in the offset, c, and its lower end projecting through a slot, u, formed in the bottom of the drawbar, and connected to a drawbar, and connected to a rod, v, being suitably journaled to a hanger, w', extending from the car, so that, upon turning the rod, the latch will be drawn back to release the branch, b, of the movable jaw, while a spiral spring, a', in the offset, c, and resting upon the shoulder, t, will throw the latch forward, or into its normal position, again, when the same is released. It will be understood that both the rods, r, u, are not to be used at the same time, although they are both shown in Fig. 1, to more clearly explain the means of operating the latch, E, when pivoted above and below. As shown best in Figs. 7, 8, and 9, the movable jaw, c, is formed with branches, b and b', the former, when the jaw is in position on the drawbar, extending back into the recess, a, in said drawbar, and having the projection, or hook, h, on its outer face, and its end, c', tapering off, so that it will the more readily slip past the latch in coupling the cars.

86 F.—9

The branch, b', is rounded, or curves on its outer face, as shown in s', in Fig. 7, to form a buffer, and has a slot or pocket, d', formed through the same, to receive a link when one of the cars it is desired to couple together is not provided with my improved coupler, but only with the ordinary link, and an opening or perforation, e', is formed vertically through b', at right angles to the pocket, d', to receive a pin, t', to secure the link in position, and complete the coupling. This pin rests on a shoulder, u' [shown in dotted lines in Fig. 2], which is cast in the front side of opening, e', so that, when the drawheads come together in coupling, the shock or concussion will jar the pin off of the shoulder, and cause the same to drop into the opening, e', and through the link. On the body of the jaw, C, at the junction of the branches, b, b', oblong journals, f', are cast. As will be noticed, the branch, b', is wider than or longer than the branch, b, and the reduction of the latter leaves shoulders, g', at the ends of the branch, b', which are curved or hollowed out, so as to fit the rounded ends of the flanges, d, of arm, B, snugly, and the journals, f', are at right angles to said curved shoulders. The journals are adapted to fit the recesses, e, formed in the flanges, d, they being inserted endwise therein through the slots, f, and thus prevent their accidental displacement. To guard more securely against any displacement, I form the curved grooves, p', in the jaw immediately opposite the journals, f', and fit a perforated block, n', having a shoulder, m', into the slot, f, and there secure it by a screw or bolt, entering its perforation through a perforation formed in the jaw, while its shoulder, m', enters the groove, p', and serves to limit the swinging movement of the jaw. Thus, it will be seen that the strain in drawing the cars is borne by the latch and hook, h, and that I provide a very strong coupler, there being but three pieces practically performing the same, and that the means employed to effect the journaling of the jaw to the drawhead forms a very secure and strong attachment, which is not liable to break or get out of repair."

The claim relied upon is the second, and is as follows:

"The combination, in the car coupler, of the hollow drawbar, having the offset, c, and arms, B, B', cast therewith, the latch, E, pivoted in said drawbar, the spring bearing against said latch, a rod connected to said chain, and the movable jaw pivoted to said arm, B, and having the branches, b, b', one of said branches being adapted to swing against the latch, substantially as described."

Robert H. Parkinson, for complainant.
Stanley S. Stout, for defendant.

GROSSCUP, District Judge (after stating the facts as above). The defendant's car coupler is almost an exact copy of the coupler described in this patent. It was not seriously questioned at the argument that, if the patent be valid, the defendant's coupler is an infringement. The complainant's device is not claimed to be a foundation invention. Car couplers, embodying its general conception, were in use many years previously. The inventive faculty has been especially fertile in this field,—so much so, that minute classification has taken place. The complainant's device falls within what is known as the "Twin Jaw," or "Janney," class. But though many inventions in this field have been offered to the public, few have been chosen. The vast majority have been found to be impracticable. The want, indeed, was a difficult one to fill. It required a coupler which could be depended upon to automatically lock with precision and certainty when the cars came together; which could be easily and instantly unlocked from the side of the car; which would remain locked under all the various movements and strains to which it was exposed; which would relieve the shock of contact without sacrificing the stability of the lock or impairing it; and which would be simple in its construction and inevitable in its operation, and hold until intentionally released.

The advance claimed for this patent over its predecessors resides in the effect produced by the offset, c, and the spring, a'. It is claimed that these two features result in flexibility of connection, and in a responsiveness that is almost instantaneous. It is true that the recess is found, in some degree, in some of the preceding patents. It is true, also, that, in some of the previous patents, a spring has been used to reinforce gravity. But no patent called to my attention discloses such recess, spring, and latch, in the same relation to each other, as the patent under consideration embodies. Success or failure in mechanical devices, requiring such nice adjustment, and subjected to so many contrary influences, may depend upon some apparently trifling alteration in the structure; but, if the required alteration has gone unheeded, through years of constant demand for its disclosure, I can see no reason why the person fortunate enough to finally hit upon it should not be given the benefits of an inventor. Retrospectively, the alteration may seem simple, such as any mechanic would have suggested; but the fact remains that, prospectively, it remained, even in the face of a strong demand, securely concealed. The court that, after the fact, pronounces such an alteration, under such circumstances, too simple to be invention, mistakenly sets its own powers of apprehension above the apprehension of the whole of that portion of the inventive world that

has been, for so long a time, giving its attention to the want in hand.

It is admitted that, in the character of coupler under consideration, until a spring appeared reinforcing the action of gravity upon the latch, the coupler fell considerably short of success. The previous letters issued to Hinson, called to my attention at argument, failed precisely at this point. Gravity, unaided, is in a degree inert and sluggish. The insertion of the spring gave greater alertness and responsiveness to the latch. In this difference, though slight, may be found the source of the present coupler's qualities for success. This view is reinforced by the fact that, though many of the preceding patents are open to the defendant for use, he chose to use a coupler embodying these so-called trivial advances found in the complainant's patents. He thus unconsciously testifies to the superiority of the complainant's coupler,—a superiority that must be due to those qualities in which it differs from its predecessors.

On the whole case I am of the opinion that the complainant's combination is a true mechanical organization, and that it includes features that are a patentable advance upon the preceding art. The usual decree for an injunction and accounting may be entered.