MILLOY ELECTRIC CO. et al. v. THOMPSON-HOUSTON ELECTRIC CO.

(Circuit Court of Appeals, Sixth Circuit. November 30, 1906.)

No. 1,547.

1. PATENTS—REISSUE—DELAY IN APPLICATION.

A patentee who is entitled to a reissue is required to exercise his right promptly upon the discovery of the error which renders such reissue necessary, and where he continues litigation for years in various courts on his original patent, after it has once been adjudged invalid, he will be deemed to have elected to stand upon such patent as the measure of his rights, and cannot thereafter obtain a valid reissue.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, §§ 201–203.]

2. SAME—TRAVELING CONTACT FOR ELECTRIC RAILWAYS.

The Van Depoele reissue patent, No. 11,872 (original No. 495,443), for a traveling contact for electric railways, is void because of the delay in making application therefor, which was not until seven years after the issuance of the original, and more than three years after it had been declared invalid by a Circuit Court of Appeals, during which time the owner was prosecuting suits for infringement in other circuits.

Appeal from the Circuit Court of the United States for the Eastern Division of the Northern District of Ohio.

E. L. Thurston and F. J. Wing, for appellants.

L. F. H. Betts and T. B. Kerr, for appellee.

Before LURTON and SEVERENS, Circuit Judges, and COCHRAN, District Judge.

SEVERENS, Circuit Judge. This is an appeal from an order granting a preliminary injunction in a suit brought by the appellee complaining of the infringement of reissued letters patent No. 11,872, granted to the appellee, as assignee of the administrators of Charles J. Van Depoele, November 13, 1900, upon an application filed September 28, 1900. The original patent was No. 495,443, granted April 11, 1893, to the appellee, as assignee of the administrators of Van Depoele, for an invention by him of a traveling contact for electric railways. The means devised by Van Depoele for the object intended consisted of an overhead conducting wire, suspended above and parallel with the track of the railway at an elevation above the top of the car; a trolley arm mounted upon the top of the car on a vertical pivot permitting the lateral swing of the arm and a horizontal pivot permitting it to swing vertically, and having at its free end a grooved wheel running underneath the overhead conducting wire and making contact therewith. A tension device was added to hold the wheel in contact with the wire.

The validity of the original patent was first assailed in a suit brought in the Circuit Court for the District of Connecticut by the Thompson-Houston Electric Company against the Winchester Avenue Railroad Company, a report of which is found in 71 Fed. 192. It was contended by the defendant, among other defenses, that the invention disclosed by the patent had already been patented to the same inventor by patent No. 424,695, issued in 1890, of which the other was a division. The objection was overruled, and the patent sustained. That decision was

rendered December 7, 1895. The Connecticut case was followed as a precedent by the Circuit Court for the Southern District of New York in May, 1896, in a suit by the appellee against the Union Railway Company, reported in 78 Fed. 363. But the validity of the patent was not then contested. These decisions were followed by the Circuit Court for the Northern District of Ohio in the case entitled Thompson-Houston Electric Co. v. Ohio Brass Co., 78 Fed. 139, on motion for a preliminary injunction. The case came to this court on appeal from an order granting it. We expressed a doubt concerning the validity of the patent, a doubt whether the invention had not been already patented, but chose to defer the decision of the question until final hearing, and affirmed the order. 80 Fed. 712. This question came before the Circuit Court of Appeals for the Second Circuit on an appeal from an order granting a preliminary injunction in Thompson-Houston Electric Co. v. Hoosick Ry. Co., 82 Fed. 461, 27 C. C. A. 419, and it was held that the claims of the patent there involved were void, because the invention had already been patented by No. 424,695. This decision was rendered July 21, 1897, and is reported in 82 Fed. 461. And in the case of the appellee against the Union Railway Company (86 Fed. 636) that court so held in respect to claims 2 and 4, which are the same as the two claims of the reissue, reversing the judgment in that case above mentioned. The question was again presented to this court on an appeal from a final decree dismissing the bill in a suit brought by the present appellee against the Jeffrey Manufacturing Company (101 Fed. 121, 41 C. C. A. 247), and the point in question, which we reserved in the case against the Ohio Brass Company, supra, was decided against the complainant, and the decree of the court below was affirmed. The date of that decision was March 15, 1900. On September 28, 1900, an application for a reissue of the patent was filed; the obvious purpose being to so shape the claims as to obviate the objection on which the Circuit Courts of Appeals for the Second Circuit and for this circuit had held the original patent invalid.

It is unnecessary for us now, in view of our proposed decision, to again institute a comparison of the original patent, No. 495,443, with the former patent, No. 424,695, which had been held to embody the same invention as that disclosed as the basis of the later patent, or to restate the grounds on which the decisions referred to were rested. These are stated in the reports above cited. Claims 2 and 4 of the original patent were two of those which had been held invalid by the Circuit Courts of Appeals for the Second and Sixth Circuits and were as follows:

"2. The combination of a car, an overhead conductor above the car, a contact device making underneath contact with the conductor, and an arm carried by the car and carrying the contact device, and pivoted so as to swing freely around a vertical axis.

"4. The combination of a car, an overhead conductor above the car, a contact device making underneath contact with the conductor, and an arm on the car movable on both a vertical and a transverse axis and carrying the contact device."

In the original patent of 1893 means were devised in the form of a spring and weight to hold the trolley wheel in contact with the wire,

and for causing the arm to assume a normally central position parallel with the longitudinal center of the car.   But, as is seen, neither of these devises was included in the second or the fourth claim.   In the application for reissue these means were disclaimed as follows:

"The combination with the contact-carrying arm of a weighted spring, or of a weight and spring, as the special means for holding the contact-arm pressed upward and of enabling the motorman to lower the contact wheel, are not claimed herein, because this special improvement has been already claimed in the patent No. 424,695, dated April 1, 1890, which was issued as a division of this application.   Nor is there claimed herein the so arranging of a weight or spring (as by causing it to work through suitable grooves or rollers arranged in the car roof) as to tend to cause the arm to assume a normal central position, or one parallel with the longitudinal center of the car, as that has also been already claimed in said divisional patent, No. 424,695, being an arrangement which is of especial value only in connection with the switches to which said divisional patent more particularly relates.   In the present application no special form or arrangement of tension device is essential to or a part of the invention claimed."

The original claims were omitted, and the two following substituted:

"1. In an electric railway, the combination of a car, and overhead conductor above the car, an upwardly-extending and laterally-swinging arm mounted on the roof of the car, and carrying a contact device at its free end and making underneath contact with the conductor, substantially as described.

"2. In an electric railway, the combination of a car, an electric overhead conductor above the car and parallel with the line of travel, an upwardly-extending trailing arm carrying a contact device at its free end, adapted to make underneath contact with the conductor, said arm being supported on the car on vertical and transverse axes, so as to permit said contact device to follow the position of the conductor, notwithstanding great variations of height and of lateral displacement thereof, substantially as described."

These claims seem indistinguishable from claims 2 and 4 of the original, and all that is accomplished in respect of these claims is the supposed effect upon the construction of them by the disclaimer of the devises for controlling the trolley arm.   But as these claims were wholly independent of these devices, and might be used in connection with any suitable devices for accomplishing a like purpose, a question might arise how these claims of the reissue differ in legal effect from the claims referred to in the original patent.   The Circuit Court of Appeals for the Second Circuit in Thompson-Houston Electric Co. v. Black River Traction Co., 135 Fed. 759, 68 C. C. A. 461, held that a change was effected in the meaning of the claims by the change in the specifications.   The court noticed the delay in the application for reissue, but said that no question arising upon it was raised, and it was not considered.   As we think the delay in applying for the reissue was too much prolonged to warrant its allowance, we do not pass upon any other question.

Section 4916 of the Revised Statutes [U. S. Comp. St. 1901, p. 3393] authorizes a reissue "whenever any patent is inoperative or invalid, by reason of a defective or insufficient specification, or by reason of the patentee claiming as his own invention or discovery more than he had a right to claim as new, if the error has arisen by inadvertence, accident or mistake, and without any fraudulent or deceptive intention." But it has been held, on grounds of public policy, that this right must

be promptly exercised upon the discovery of the error. Miller v. Brass Co., 104 U. S. 350, 26 L. Ed. 783; Mahn v. Harwood, 112 U. S. 354, 6 Sup. Ct. 451, 28 L. Ed. 665; White v. Dunbar, 119 U. S. 47, 7 Sup. Ct. 72, 30 L. Ed. 303; Ives v. Sargent, 119 U. S. 652, 7 Sup. Ct. 436, 30 L. Ed. 544; Parker & Whipple Co. v. Yale Clock Co., 123 U. S. 87, 8 Sup. Ct. 38, 31 L. Ed. 100; Dobson v. Lees, 137 U. S. 258, 11 Sup. Ct. 71, 34 L. Ed. 652; Wollensak v. Sargent, 151 U. S. 221, 14 Sup. Ct. 291, 38 L. Ed. 137; Walker on Patents, § 227.

In Mahn v. Harwood, supra, it was declared that:

"By anology to the rule as to the effect of public use before an application for a patent, a delay of more than two years would, in general, require special circumstances for its excuse."

And this general rule has been followed in later cases.

In this instance the original patent was granted April 11, 1893. The application for the reissue was filed September 28, 1900. In the meantime, as the record shows, various persons had been acting upon the supposed invalidity of the patent and upon the understanding that the patentee had correctly disclosed the invention he supposed he had made; and on July 22, 1897, the patent was declared invalid by the Circuit Court of Appeals for the Second Circuit, and no review of that decision was prosecuted. In the litigation which preceded that decision, commencing as early as 1895, the attention of the patentee was directly challenged to the specifications of the patent, and they were elaborately canvassed. If any error had been committed in the language employed or in claiming more than was new, it was as discoverable then as it ever became, unless, indeed, a patentee has the right to await the result which the courts may reach after prolonged litigation and examination of the subject. If he has such a right, notwithstanding he knows the grounds on which the error is predicated, it is pertinent to inquire how long and to what number of courts he can continue to submit the question for judicial determination. Here the patentee held its ground and insisted upon the patent as it stood. It carried its case to the highest court that it could without a certiorari to the Supreme Court, which it did not prosecute. This was more than three years before the application for reissue was filed. Instead of then applying for a reissue, it took its chances in another co-ordinate jurisdiction, and, failing there, resorted to the proceeding for reissuing the patent. The patent of 1890, No. 424,695, had been held valid in respect to the invention covered by claims 2 and 4 of the patent of 1893. But the appellee chose to take its chances of prolonging its monopoly by continuing its effort to establish the later patent, which the court had held to be invalid. We cannot think that a patentee may thus experiment with his patent. On the contrary, we think that, when the grounds are disclosed for thinking there may be an error or mistake, he is bound in duty to the public to correct it by obtaining a reissue or to adhere to his original patent; and, if he declines to correct it, he should be deemed to be standing upon it as the measure of his right. A different doctrine would go far to defeat the object of the rule which requires the patentee to define his invention with such distinctness that other inventors, and the public as well, may know its

scope and limitations.  And it is not alone those persons who are shown to have taken action upon the faith that the patent defines the character of the invention who may raise the objection to a change in its claims which makes it cover other ground than that claimed before.  The rule does not rest upon the ground of an estoppel in favor of particular persons.  As was said by Mr. Justice Bradley in White v. Dunbar, 119 U. S. 47, 52, 7 Sup. Ct. 75, 30 L. Ed. 303:

"The circumstance that other improvements and inventions, made after the issue of a patent, are often sought to be suppressed or appropriated by an unauthorized reissue, has sometimes been referred to for the purpose of illustrating the evil consequences of granting such reissues; but it adds nothing to their illegality.  That is deduced from general principles of law, as applied to the statutes authorizing reissues and affecting the rights of the government and the public."

Walker on Patents (4th Ed.) p. 210, § 226.

What we have here said is in deference to the opinion of the Circuit Court of Appeals for the Second Circuit that the claims of the reissue do not mean the same things as claims 2 and 4 in the patent of 1893, on account of the disclaimer in the application for reissue, and upon the assumption that the contention of counsel here in that regard is correct. If in fact the claims of the reissue are for the same things as the claims 2 and 4 of the original, the case falls directly under our decision in the Case of the Jeffery Mfg. Co., above mentioned.  Besides, the reissue would unlawfully prolong the term of the original patent.

Without referring to other questions, we are of opinion that the order of the court below should be reversed, and the cause remanded. The appellant will recover costs in both counts.