THOMSON-HOUSTON ELECTRIC CO. v. WESTERN ELECTRIC CO.

(Circuit Court of Appeals, Second Circuit.   November 6, 1907.)

No. 64.

APPEAL—INTERVENTION IN APPELLATE COURTS—PATENT SUIT.
  A Circuit Court of Appeals will not permit an intervention in a patent cause which is ready for hearing on appeal for the purpose of having the case remanded for the taking of further proofs, on the ground of collusion between the parties, where the record does not support such charge, and where the petitioner had full opportunity to intervene in the court below.
  [Ed. Note.—For cases in point, see Cent. Dig. vol. 2, Appeal and Error, § 1836.]

Appeal from the Circuit Court of the United States for the Southern District of New York.

On petition of Sterling-Meaker Company to intervene.

Wm. A. Jenner, for petitioner.

L. F. H. Betts, D. C. Turner, George P. Barton, George E. Folk (Thomas B. Kerr, of counsel), for respondent.

Before COXE, WARD, and NOYES, Circuit Judges.

(Circuit Court of Appeals, Second Circuit.   December 4, 1907.)

No. 64.

1. PATENTS—VALIDITY OF REISSUE—LACHES.
  The question whether two patents are for the same invention is one of law, to be determined by a comparison of the documents themselves, no extrinsic evidence being necessary, and hence the decision of a Circuit Court of Appeals holding the later patent void for double patenting, al-

though rendered on an appeal from an interlocutory order granting a preliminary injunction, is in effect a final decision for the purpose of advising the owner of the invalidity of the patent, and any delay thereafter in applying for a reissue for the purpose of curing such invalidity is at his peril.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, § 201.]

**2. SAME.**

The owner of a patent which has been declared void by the decision of a Circuit Court of Appeals cannot thereafter continue litigation thereon for years in other circuits, and, if finally defeated, then apply for and obtain a valid reissue.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, § 201.]

Time for application for reissue, see note to United Blue-Flame Oil Stove Co. v. Glazier, 55 C. C. A. 560.]

**3. SAME.**

The Van Depoele reissue patent No. 11,872 (Original No. 495,443), for a traveling contact for electric railways, is void for laches in applying for the reissue.

Appeal from the Circuit Court of the United States for the Southern District of New York.

This is an appeal from a decree of the Circuit Court for the Southern District of New York dated April 5, 1907, dismissing the bill with costs. No opinion was written, as the Circuit Court followed the decision of the Circuit Court of Appeals of the Sixth Circuit (Milloy Case, 148 Fed. 843, 78 C. C. A. 533) holding the patent void because of laches in applying for the reissue. Since 1895 the original patent and the reissue, in controversy here, have been the subject of protracted litigation, no less than 22 decisions being reported. A history of this litigation, concisely stated, will be found in the opinion of Judge Lanning in the Sterling-Meaker Case (C. C.) 150 Fed. 589.

Thomas B. Kerr and L. F. H. Betts, for appellant.

George P. Barton, De Witt C. Tanner, and George E. Folk, for appellee.

Before COXE, WARD, and NOYES, Circuit Judges.

COXE, Circuit Judge. This is an infringement suit founded upon reissued letters patent No. 11,872, granted November 13, 1900, to the complainant, as assignee of the administrators of Charles J. Van Depoele, deceased, for improvements in traveling contacts for electric railways. The original patent No. 495,443 was dated April 11, 1893, and the application for the reissue was filed September 28, 1900, 7 years, 5 months and 17 days thereafter. On July 21, 1897, this court, in an action by complainant against Hoosick Ry. Co. upon an appeal from an order granting a preliminary injunction (82 Fed. 461, 27 C. C. A. 419) decided that claims 6, 7, 8, 12, and 16, were invalid for double patenting, the same invention being described in letters patent No. 424,695 to Van Depoele April 1, 1890, upon a divisional application. In reaching this conclusion the court decided the following propositions:

First. Upon an appeal from an order granting an injunction, the Circuit Court of Appeals is at liberty to re-examine the decision of another circuit court, which ruling, the court granting the injunction felt constrained to follow, and dispose of the questions of law, conformably to its own convictions.

Second. The question whether two patents are for the same invention is to be determined by a comparison of the documents themselves; no extrinsic evidence being necessary to enable the court to ascertain their meaning and true construction.

Third. The two patents, No. 424,695 and No. 495,443, are unambiguous and even the file wrappers, which were in the record, are of little value as extrinsic evidence.

Fourth. The matter sought to be covered by the later patent is inseparably involved in the matter embraced in the earlier patent and, therefore, the claims in controversy are void. Miller v. Mfg. Co., 151 U. S. 198, 14 Sup. Ct. 310, 38 L. Ed. 121.

The changes of phraseology between the claims of the two patents import nothing of substance into the claims of the later patent which, in different language, describe the same combinations covered by the claims of the earlier patent. This decision was announced 3 years, 2 months and 7 days prior to the application for the re-issue.

On April 7, 1898, in an action by complainant against the Union Railway Co., 86 Fed. 636, 30 C. C. A. 313, this court, on appeal from an order granting a preliminary injunction, held that claims 2 and 4 of the later patent No. 495,443 were invalid for double patenting. This decision was announced 2 years, 5 months and 20 days prior to the application for the reissue.

In Thomson-Houston Co. v. Black River Traction Co., 135 Fed. 759, 68 C. C. A. 461, this court decided that the two claims of the reissue in suit were valid, the object of the reissue, which was to avoid the defense of double patenting, having been effectually accomplished. Although the tension device was not an element of claim 4 of the original it was held in the Union Railway Case that it must be read into the claim by implication and, as so construed, the claim was for the same invention as that covered by several of the claims of the earlier patent. In other words, in the Black River Case the court construed the claims of the reissue as containing four elements and those of the original patent as having more than four elements and, being so differentiated, the reissue was upheld. At page 764 of 135 Fed., page 466 of 68 C. C. A., the court says:

"Holding, as we do, that the tension device is not an element of the claims of the reissue, it is plain that the invention of those claims had not been patented, previously to the original patent, because in none of the claims of the patent of April 1st, 1890, was there one for a combination of the elements now claimed which did not also specify a tension device as an element."

We see no escape from the conclusion that, under the previous decisions of this court, the claims of the reissue are broader than those of the original. The reissue was saved from the fate of the original because its claims have but four elements whereas the claims of the original were construed to have five. We cannot now read into the claims the very element, the omission of which gave them vitality. If these claims are construed to include a tension device they are void for double patenting; if construed, as of course, they must be under the decision in the Black River Case, as containing but four elements, namely, the car, the overhead conductor, the swinging arm and the

contact device, it is obvious that they are broader than the claims of the original. It will thus be seen that the only questions left open for discussion are laches in applying for the reissue and the question of infringement.

The question of laches has not been decided by this court but this patent has been held invalid on this ground by the Circuit Court of Appeals of the Sixth Circuit in the Milloy Case, 148 Fed. 843, 78 C. C. A. 533, and by the Circuit Court for the District of New Jersey in the Sterling-Meaker Case, 150 Fed. 589. It will simplify the discussion if we assume, without deciding, that the complainant was justified in delaying the application for a reissue until the question of double patenting was disposed of by the highest court to which it could be carried—namely, a Circuit Court of Appeals. Such a decision, as we have seen, was rendered by this court 3 years, 2 months and 7 days before the application for the reissue in one case, and 2 years, 5 months and 20 days in the other. But it is argued not only that the complainant was entitled to have the question decided by an appellate court, but also to have the decision rendered at final hearing and on plenary proofs. We are not impressed by this contention. Of course, there are many questions arising on a motion for a preliminary injunction which cannot be satisfactorily determined until the proofs are taken, and this court has consistently refused to decide doubtful questions depending on disputed facts upon appeals from such orders. This is not such a case. The question here is not of fact but of law, to be disposed of by a comparison of the two patents. This was, in effect, decided by this court in the Hoosick Case. Although the Court of Appeals for the Sixth Circuit in the Ohio Brass Case, 80 Fed. 712, 26 C. C. A. 107, intimated that light might be thrown upon the question of double patenting by postponing the question until final hearing, yet, when the question was presented on appeal from final decree in the Jeffrey Case, 101 Fed. 121, 41 C. C. A. 247, it was decided, precisely, as in this court, by a comparison of the documents. Indeed, we fail to see how it could be decided in any other way and we do not find that the complainant has pointed out any testimony which might have been introduced in the Hoosick Case or which was introduced in the Jeffrey Case which presents the question there at issue in any more favorable light for the complainant. It may be conceded that this court might have refused to pass definitely upon the question of double patenting on the appeal from the order, but we are here concerned with what the court did do, not what it might have done. What it did do was to decide in an elaborate opinion that the patents were unambiguous, that no testimony was needed to explain their meaning and that the claims of the patent in issue were void. It seems incredible that the complainant's officers should have supposed, after a decision so positive and unqualified in its logic, that the court would reach a contrary conclusion at final hearing. When thus informed of the invalidity of its patent it was complainant's duty to file the application for a reissue at once.

Any delay after July 21, 1897, was at the complainant's peril. Two courses were open, it could apply for a reissue or continue the litiga-

tion, it could not do both. Apparently the former course offered the surest premise of speedy and widely extended relief; the latter depended for complete success upon the concurrence of three somewhat remote contingencies— (1) A contrary decision by another Circuit Court of Appeals, (2) a certiorari by the Supreme Court, (3) a decision by that court overruling the defense of double patenting. The complainant took the chance, remote though it was, of obtaining a reversal of the doctrine of the Hoosick Case and continued to litigate on these lines until the Circuit Court of Appeals of the Sixth Circuit, nearly three years afterwards, reached the same conclusion as this court, and the original patent No. 495,443 received its coup de grace. We think the complainant could not so experiment with the patent and, having failed, attempt to secure relief which is only available when promptly applied for. The complainant was in no way surprised or misled, it knew of the defense of double patenting as early as July, 1893, the defense had been urged in various litigations and finally the infirmities of the later patent were pointed out by a Circuit Court of Appeals, there being no higher court to which the controversy could ordinarily be carried. Surely, when this decision was announced the complainant should have acted promptly in an endeavor to secure a reissue, it had no time to spare. Rights had been, and in all probability would be acquired, based upon the invalidity of the original patent. A just regard for the rights of the public demanded, if the patent was to be resuscitated in the form of a reissue, that it should be done immediately; and especially so when the reissue claims were to sweep under the monopoly devices not covered by the claims of the original.

The complainant tacitly admits that if the application had been delayed, for a longer period than was reasonably required to prepare the papers for a reissue, after an adverse decision by a Circuit Court of Appeals from a decree taken at final hearing, laches could fairly be predicated of such delay. As before stated we think the decree in question was, in everything but name, a final decree. The complainant could not have received a more definite or final information regarding the invalidity of the claims. If such reasons for delay as are now advanced are to be sanctioned, the rights of the public will be seriously jeoparded and the door opened to excuses limited only by the ingenuity of counsel. Defects can be found in every record. Especially after a decision is rendered, additions and changes suggest themselves which might make the case of the defeated party stronger, but the contention that an application for a reissue may be delayed indefinitely to enable him to present the same question to other courts of co-ordinate jurisdiction is against public policy, subversive of intervening interests and runs counter to the reissue decisions of the Supreme Court.

We agree with the language of the court in the Milloy Case, supra. Judge Severens says:

"But the appellee chose to take its chances of prolonging its monopoly by continuing its effort to establish the later patent, which the court held to be invalid. We cannot think that a patentee may thus experiment with his patent. On the contrary, we think that when the grounds are disclosed for thinking there may be an error or mistake, he is bound in duty to the public to

correct it by obtaining a reissue or to adhere to his original patent; and if he declines to correct it, he should be deemed to be standing upon it as the measure of his right. A different doctrine would go far to defeat the object of the rule which requires the patentee to define his invention with such distinctness that other inventors, and the public as well, may know its scope and limitations."

We are of the opinion that no sufficient excuse for the delay in applying for the reissue after the decision of this court in the Hoosick Case has been shown and that for this reason the reissue is void.

The decree is affirmed, with costs.