SIROCCO ENGINEERING CO. v. B. F. STURTEVANT CO.

(Circuit Court, S. D. New York. October 21, 1909.)

1. PATENTS (§ 133*)—REISSUE—EFFECT OF DELAY IN MAKING APPLICATION.

Where a patentee, on obtaining information of prior foreign patents and becoming convinced that some claims of his patent had inadvertently been made too broad, promptly applied for a reissue which did not broaden the invention claimed, and no rights are shown to have intervened, the fact alone that the application was not made for seven years after the granting of the original does not render the reissue invalid.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 201–203; Dec. Dig. § 138.*

Time for application for reissue. see note to United Blue-Flame Oil Stove Co. v. Glazier, 55 C. C. A. 560.]

2. PATENTS (§ 328*)—REISSUE—VALIDITY.

The Davidson reissue patents Nos. 12,796 and 12,797 (original No. 662,-395), for a centrifugal fan or pump, are not so clearly void as to justify their being so held on demurrer.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

In Equity. Suit by the Sirocco Engineering Company against the B. F. Sturtevant Company for infringement of reissued letters patent Nos. 12,796 and 12,797 (original No. 662,395), for a centrifugal fan or pump granted to Samuel C. Davidson. On demurrer to amended bill. Demurrer overruled.

For prior opinion, see 171 Fed. 440.

Arthur C. Fraser, for complainant.
O. F. Hibbard, for defendant.

HOUGH, District Judge. The decision upon demurrer to the original bill substantially held that some reason or explanation must be given for a delay of over seven years in applying for reissued letters patent. By amendment an explanation has been given, viz., that the original letters patent were drawn in good faith, but "without full knowledge of the prior art nor of the precise nature or novelty of the invention"; that, after commercial success had been obtained, the patentee became aware that his letters patent "were being infringed by the defendant herein," and thereupon an action was brought in this

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

court; that several months after such action was begun this defendant set up as an additional defense "a certain alleged newly discovered foreign patent never previously cited nor known" to the patentee; that thereupon careful consideration was given said foreign patent (in connection with knowledge already at hand) for between two and three months, at the end of which time the patentee, under advice of counsel, concluded that "certain of the claims" of the original patent were "void or of doubtful validity," and that said original patent really "included three separable and distinct improvements or inventions which could and should have been patented separately," wherefore the patentee concluded to correct "this error," i. e., the failure to obtain three patents originally, and the undue "breadth of said claims," by reissuing the original patent in three divisions, all of which was accordingly done with great diligence, and thereupon this action was brought against the same defendant confessedly for the same infringement but only upon two of the reissues.

The amended bill does not explain in what the "undue breadth" of claims consisted. Profert is made of the patents to be considered. Defendant now asserts that the excuse or reason given for obtaining the reissues is insufficient, and that the reissues are void.

As explained on argument, error is alleged in the patentee's proceedings in two regards: (1) The plaintiff was not entitled to any reissue whatever under the statute, and (2) if he was originally so entitled seven years' delay has deprived him of that right.

Under the decisions of which Topliff v. Topliff, 145 U. S. 156, 12 Sup. Ct. 825, 36 L. Ed. 658, and Miller v. Brass Co., 104 U. S. 350, 26 L. Ed. 783, are the leading cases, neither proposition advanced by defendant can be considered with any satisfaction, without examining and comparing the original and reissued patents. This is because these cases draw a clear distinction between broadened reissues and "narrowed and truthful reissues." Maitland v. Goetz Mfg. Co., 86 Fed. 128, 29 C. C. A. 611. Mere convenience, or an orderly desire to have inventions neatly arranged, is not enough to authorize a reissue. The original patent must have been either inoperative or invalid, and the defect must arise either from a specification defective or insufficient, or because the patentee claims as his own more than he had a right to claim; and, further, such error must grow out of inadvertence, accident, or mistake, without intention to defraud or deceive. An examination of the original patent (662,395) shows very plainly that what the patentee conceived himself to have invented is a particular form of fan or pump. Its most familar embodiment is commonly known as a centrifugal ventilator. The fan is appropriately described in argument as a "squirrel cage"; that is, it is a cylinder formed by the affixing of narrow fan blades close together to the periphery of a circular disc, and at right angles to the plane of said disc. Such a construction is obviously a cylinder of a length regulated by the length of the fan blades; open at one end, closed by the disc at the other, and having a hollow center of great diameter as compared with the diameter of the cylinder formed by the circumferential blades. This cylindrical construction when revolved rapidly upon its axis (by appropriately con-

necting the hub of the disc to proper machinery) constitutes a method according to the patent of drawing any fluid (either gaseous or liquid) into the hollow "intake chamber, in which it expands without perceptibly revolving until it is caught by the blades and drawn into the (spaces) between them, whereby the fluid in these (spaces) is converted into a whirling shell of fluid; whereby it is thrown outward by centrifugal force and discharges from the outer sides of the (spaces between the blades) as a whirling and expanding shell of fluid, the individual particles of which move in a tangential direction."

The patentee did not and does not assert that there were no centrifugal fans before his, but he does assert that such other fans had employed "blades of great radial measurement" or were propeller fans, i. e., wheels with paddles which merely acted "upon the fluid with a wedging action, pushing it from them without materially rotating it." The patentee discovered (as he originally asserted) that "by providing a relatively large intake chamber practically unobstructed by the projection into it of blades or other parts, and by employing blades which extend as short a distance from the periphery of the fan inward as is consistent with strength of construction," vibrations and eddies were minimized, and the "velocity and volume of fluid discharged for a given speed of revolution (were) greatly increased." This was the kernel of complainant's invention. In other words, the discovery consisted in providing a means of constructing and operating a centrally rotating narrow bladed fan or pump of cylindrical form with a large unobstructed axial intake chamber. The patent covered a large variety of forms, all cylindrical, all with large intake chambers, all with narrow blades, all axially rotated, and differing from each other only in the shape and size of the fan blades, their relations to each other in peripheral or circumferential adjustment, and the relation of casing to fan or pump.

As reissued, No. 12,796 shows the same construction and repeats many of the original claims, but modifies others so as to describe a construction in which the intake edges of the peripheral fan blades shall be as nearly as possible the same distance from each other as are the outer or discharging edges of the same. The effect of this is said to be that the "inner edges revolve at a peripheral speed so nearly approaching that of the outer edges that the fluid is drawn in at (said) inner edges at approximately the same rate as it is discharged from the outer edges." No. 12,797 sets forth the same construction as in the original patent, but modifies most of the claims so as to cover only that form of construction wherein curved or polygonally angled blades are employed and circumferentially arranged so that their "outer edges incline forwardly in advance of their inner edges, and which are concave on their advancing sides." The patentee then states in this reissue that "such forward inclination of the blades results in the discharge of the fluid at a velocity exceeding the circumferential speed of the outer edges of the blade. This effect is most marked when the outer width of the (spaces between the blades) is less than their inner width." The third reissue is not involved in this case, and covers a form of construction in which the blades are open at their intake ends. If I have cor-

rectly followed the transmutations of this patent, the two reissues now in suit present inventions which were clearly described in the original patent. I do not think it would have been possible for any form of drum-shaped axially rotating fan with narrow blades and a large unobstructed axial intake chamber to have been constructed which would not have been either an infringement or an anticipation according to the time of its devising. The only effect of these two reissues is to separate that form of fan in which the blades are as nearly parallel to each other as cylindrical construction will admit, from that in which concave blades are so arranged as to be nearer each other at their outer edges than they are at their inner. Of course, the different rates or velocities of tangential discharge set up in the reissues as marking these differing forms of construction cannot be patented; only the means for producing such results can be protected.

By mere reading the patents, without the aid of expert testimony, or examination of actual machines, no entirely satisfactory conclusion can be reached. But by construing the patents as read most favorably for the complainant, I conclude:

The reissues in question are not broadened; that is, everything claimed or described in either of the reissues in suit was fully described and (in my opinion) claimed in the original patent. But neither have the claims been narrowed; that is, the sum of the three reissues is exactly equal to the original patent. Inasmuch as there has been no broadening, and it is not and cannot be shown on demurrer that any intervening rights have arisen by reason of delay, I do not think that the mere fact of seven years' delay has taken away the right to a reissue (provided that such reissue be otherwise lawful).

But if the patents or the claims thereof are not narrowed, what was there in the original patent or the circumstances of obtaining the same which justified a reissue under the statute? What was the defect or insufficiency, and how did it arise? Rather from argument than from the language of the bill, I come to the conclusion that the real defect or insufficiency was this, viz., the draughtsman of the original specification did not know of the foreign patent above referred to. He therefore included in one application all embodiments of the applicant's idea that he could think of, including one form or some forms which he now thinks or fears may have been anticipated by this foreign invention. Having drawn his application (so to speak) generically, he was afraid that some court or courts might (perhaps erroneously) find that an anticipation of one of the species of his genus invalidated his patent, and he therefore transformed his generic patent into three specific patents, and now sues upon the species he believes or hopes not to have been anticipated by that which he did not know of seven or eight years ago. If this be a true reading of the story told by the pleadings, the question remains, Is such a reissue lawful?

I know of no decision in which the effect of several reissues, in the aggregate exactly equal to an originally well-drawn patent, has been considered; and counsel have not been able to bring any such decision to my attention. For myself, I think this original patent good on its face, with well-drawn specifications and appropriate claims. I am,

however, quite unable to see what good or harm has been done to the patentee or the public by these reissues, and (so far as the court is now informed) the defendant is not harmed, nor are there any known intervening rights. Whatever, therefore, may be the fate of these reissues when the evidence is all in, it appears to me that at present the language of Milloy Electric Co. v. Thompson-Houston Electric Co., 148 Fed. 843, 78 C. C. A. 533, is instructive and conclusive. "We think that when the grounds are disclosed for thinking there may be an error or mistake, he (the patentee) is bound in duty to the public to correct it by obtaining a reissue."

In this case there may not be any mistake; the patentee may have obtained his reissues without just cause; it may have been better for him to have stood on the original patent; but my bare reading of the patent may easily be corrected by evidence, and (in effect) the patentee swears that he thought that there was an error, dangerous to himself (courts being what they are), which might be corrected by a reissue, and there is nothing now to show that such correction was or is injurious to any other law-abiding citizen.

Under these circumstances I think that the validity of these reissues should not be decided on demurrer, and the demurrer is accordingly overruled, with leave to answer on the rule day succeeding entry of order, on payment of costs as taxed.