THOMSON–HOUSTON ELECTRIC CO. v. UNION RY. CO. et al.

(Circuit Court of Appeals, Second Circuit.   April 7, 1898.)

No. 110.

PATENTS—INVENTION—ELECTRIC RAILWAY DEVICES.

   The Van Depoele patent, No. 495,443, for a traveling contact for electric railways, must be construed, as to claims 2 and 4, as including, by implication, means for maintaining the contact device and the conductor in their normal working relations, and, so construed, are void, as being for the same invention as letters patent No. 424,495, to the same inventor.

Appeal from the Circuit Court of the United States for the Southern District of New York.

This was a suit in equity by the Thomson-Houston Electric Company against the Union Railway Company and others for alleged infringement of claims 2 and 4 of the Van Depoele patent, No. 495,443, for a traveling contact for electric railways.   The circuit court granted a preliminary injunction (78 Fed. 363), and the respondents have appealed.

William S. Kenyon and Charles E. Mitchell, for appellants.

Frederick H. Betts, for appellee.

Before WALLACE and SHIPMAN, Circuit Judges.

PER CURIAM.   This appeal involves the question whether claims 2 and 4 of letters patent No. 495,443, for a "traveling contact for electric railways," granted April 11, 1893, to the administrators of Charles A. Van Depoele, assignors to the complainant, are void because they are for the same invention which had been previously patented in letters patent No. 424,495.   The invention, to adopt the language of an expert witness for the complainant in a former suit brought upon the patent, "consists generally in an electric railway, having an overhead conductor, and a car for said railway, provided with a contact device carried by the car so as to form a unitary structure therewith, and consisting of a trailing arm hinged and pivoted to the car so as to bridge the space between it and the conductor, and move freely both laterally and vertically, and said arm carrying at its outer end a contact device capable of being pressed upward, by a suitable tension device, into engagement with the under side of the conductor."   The essential features of construction involve the location of the supply conductor above the track and line of travel of the car, and contact with its under side, the arrangement of the contact device on a trailing arm, and the maintenance of a constant upward pressure by means of a tension device operating upon a hinged arm.   The two claims in controversy are:

   "(2) The combination of a car; an overhead conductor above the car; a contact device, making underneath contact with the conductor; and an arm carried by the car, and carrying the contact device, and pivoted so as to swing freely around a vertical axis."   "(4) The combination of a car; an overhead conductor above the car; a contact device, making underneath contact with the conductor; and an arm on the car, movable on both a vertical and a transverse axis, and carrying the contact device."

The patent contains 16 claims.   The characteristics of the invention, and the scope and validity of many of the claims, were consid-

ered by this court in Thomson-Houston Electric Co. v. Hoosick Ry. Co., 27 C. C. A. 419, 82 Fed. 461, where we held that claims 6, 7, 8, 12, and 16 were for the same inventions which had been previously patented; and a reference to the opinion in that case will dispense with the necessity for any extended discussion now.     Referring to some of those claims, we said:

"It would be a waste of time to dwell upon the verbal differences in these claims.   The changes in phraseology import nothing of substance into their respective combinations.   They describe the same thing in different language."

It is insisted for the appellants that the two claims now in controversy are for the same combination specified in some of the claims which were then held to be void.     The appellee contends that they are not, because they omit to specify any means for holding the contact device in underneath contact with a conductor, and consequently can be construed as covering a subcombination in which such means are not employed, or, if such means must be read into the claims by implication, the claims are not limited to the means described in the specification, and that upon either construction they are not the claims of the earlier patent.     The court below adopted this view.     If the appellants are right, no other question need be considered.     It will be seen that these claims are for identical combinations, except that the arm is differentiated in each by functional characteristics.     The specification describes a traveling arm carried by a post on top of the car, "which is hinged, and should in most instances be also pivoted, to the top of the post, although a reasonable amount of looseness in the hinged joint will answer the purpose of the pivot."     When pivoted, "it swings freely around a vertical axis," and meets the terms of claim 2.     When hinged and loosely jointed, it is "movable on both a vertical and transverse axis," and meets the terms of claim 4.     We do not entertain any doubt that there must be incorporated into these claims, by implication, means for maintaining the contact device and the conductor in their normal working relations.     Without them, there is really no "traveling" contact device, and no operative combination, and the claims would cover merely an aggregation of devices which do not co-act unless assisted by some instrumentality which must be discovered and supplied.     The function of the arm, as constructed and arranged, is to establish "moving contact," while maintaining a positive mechanical connection between the vehicle and the conductor.     It was devised because, as previously mounted, the contact device was found to be deficient in capacity to follow the sinuosities and deflections of the conductor while the car was in motion.     It can only perform this function by the aid of some instrumentality which holds it constantly in the proper relations to bridge the space between the car and the conductor, and keep the contact device and the conductor in electrical connection.     As pointed out in the specification, this consists of a tension device operating upon the arm, and maintaining a constant upward pressure, thus holding the contact device to the conductor.     This tension device, or its equivalent, is an indispensable element of the respective combinations.     That the proper construction of the claims is as thus indicated is evidenced by the proceedings upon interference in the patent office.     Claim 2 is a literal statement of the issue defined

and formulated by the patent office between what was then claim 1 of the application and the claims of two interfering applications. Claim 1 was as follows:

"In an electric railway, the combination, with a suitable contact, and the supply conductor suspended above the track, of a car provided with a swinging arm, carrying a contact device in its outer extremity, and means for imparting upward pressure to the outer portion of the arm and contact, to hold the latter in continuous working relation with the under side of the supply conductor, substantially as described."

In formulating the issue the office omitted, as unnecessary, because necessarily implied, the elements enumerated in claim 1 of the application which are not enumerated in claim 2 of the patent. One of these elements was "means for imparting upward pressure to the outer portion of the arm and contact." This element was apparently thought to be as indispensable to the operativeness of the combination of the claim as was "a suitable track," an element also omitted. The appellee concedes that the claims are for combinations specified in other claims of the patent, which by our former decision were held to be void, if they require the construction which we have placed upon them. Indeed, claim 6, which we held to be void, is identical in terms with claim 1 of the interference proceedings,—the claim which the patent office regarded as embodying the invention covered by present claim 2. The rule of construction which usually obtains, whereby the several claims of a patent are to be differentiated so that effect may be given each, cannot be reasonably invoked in behalf of this patent, where so many of the claims are duplicated. The order granting a preliminary injunction is reversed.