THOMSON–HOUSTON ELECTRIC CO. v. BLACK RIVER TRACTION CO.

(Circuit Court of Appeals, Second Circuit. January 23, 1905.)

No. 23.

1. PATENTS—CONSTRUCTION OF CLAIMS OF REISSUE.

Where claims of a patent were construed to include by implication an element not expressly claimed therein, but which was described and shown in the specification and drawings, and, as so construed, held anticipated, and, to avoid the effect of such decisions, the patentee applied for and was granted a reissue on a new specification, which expressly disclaimed such element, it should not be read into the claims of the new patent, although they are in terms substantially like those of the old, but the courts should, if possible, adopt the construction placed on them by the patentee and the Patent Office giving effect to the disclaimer.

2. SAME—SUBCOMBINATION.

A patentee of a combination may also obtain a patent on a divisional application for a subcombination of some of the same elements if new and useful in itself, or in connection with previously known means or devices necessary to make the whole an operative machine or structure.

[Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Patents, §§ 27–29.]

3. SAME—REISSUE—VALIDITY.

Even though the changes in description in the specification of a reissued patent are not material, and the claims are identical with some of those of the original patent, such facts do not impeach their validity.

4. SAME—INFRINGEMENT—TRAVELING CONTACT FOR ELECTRIC RAILWAYS.

The Van Depoele reissued patent, No. 11,872 (original No. 495,443), for a traveling contact for electric railways, covers a novel and useful combination, and discloses invention. Also *held* infringed.

Appeal from the Circuit Court of the United States for the Northern District of New York.

For opinion below, see 124 Fed. 495.

Frederick H. Betts, for appellant.

John R. Bennett, for appellee.

Before WALLACE, Circuit Judge, and WHEELER and HAZEL, District Judges.

WALLACE, Circuit Judge. This is an appeal from a decree dismissing the bill of complaint in an action for the infringement of reissued letters patent No. 11,872 to Thomson-Houston Electric Company, assignee of Charles J. Van Depoele, granted November 13, 1900. It was decided by the court below that the reissue was void, among other reasons, because the invention described and claimed therein had been described and claimed by Van Depoele in letters patent No. 424,-695, granted to him April 1, 1890, and previously to the patent of which the patent in suit is the reissue. The original patent, No. 495,443, was granted April 11, 1893, upon an application by Van Depoele filed March 12, 1887, and is for "traveling contact for electric railways."

The questions which have been argued upon this appeal are whether the reissued patent is void because the invention claimed therein had been patented by Van Depoele previously to the issue of the original letters patent, whether there was any statutory ground for a reissue, and whether the reissue is not for the same invention as the original.

The invention of Van Depoele described in the original patent relates to improvements in the class of electric railways in which a suspended conductor is used to convey the working current, and a traveling contact is carried by the car for taking off the current and operating the motor for propelling the car, the return circuit being completed through the rails; and the invention consists generally in a combination with a supply conductor, suspended above the track and line of travel of the car, of devices carried by the car so as to form a unitary structure therewith, of which the principal are a contact device, and devices employed for maintaining it in traveling contact with the conductor. These consist of a contact device carried at the end of a contact arm, a contact arm hinged and connected with the car so as to bridge the space between the car and the conductor, and moving freely both vertically and laterally, and a tension device operating upon the hinged arm so as to maintain constant upward pressure and keep the contact device in proper engagement with the conductor. As described in the specification and shown in the drawings, the contact device is a grooved wheel, carried at the end of the contact arm which approaches the conductor, and arranged to rotate thereon. The arm is mounted upon a post upon the top of the car, and hinged and pivoted upon the post so as to be capable of swinging both vertically and horizontally through considerable arcs, and is of a length that will place the contact wheel about over the rear wheels of the car; and the tension device is attached to the short end of the arm, and regulates the movement of the arm by pulling and holding that end down and pressing the long end upward to bring the grooved wheel into engagement with the under side of the conductor. The tension device is thus described in the specification:

"To the lower end of the arm, F, is attached a spring, G, to the lower extremity of which is secured a cord which passes downward through suitable grooves or over suitable rollers, and is provided with a weight, H, which serves to hold the spring down and keep the contact wheel, E, always pressed up against the under side of the conductor, D, at the same time the spring will instantly yield to allow the wheel to pass under the switches or any obstruction. Being held in position by the weight, the motorman can at any time lower the contact wheel by raising the same, rendering the arrangement very convenient for many reasons."

The patent contained 16 claims, of which for present purposes it is necessary to refer only to the following:

"(4) The combination of a car, an overhead conductor above the car, a contact device making underneath contact with the conductor, and an arm upon the car movable upon both a vertical and a transverse axis and carrying the contact device."

In Thomson-Houston Electric Company v. Union Railway Co., 86 Fed. 636, 30 C. C. A. 313, it was decided that claim 4 was void because the invention therein specified had previously been described and claimed in the patent granted Van Depoele (No. 424,695) on April 1, 1890. In Thomson-Houston Electric Co. v. Jeffrey Manufacturing Co., 101 Fed. 121, 41 C. C. A. 247, the Circuit Court of Appeals for the Sixth Circuit reached the same conclusion.

The patent of April 1, 1890, was for "suspended switch and traveling contact for electric railways." The invention therein described consist-

ed of certain devices and their relative arrangements by means of which a contact device carried by a rod or pole extending from the car and pressed upwardly into contact with the conductor is switched from one line to another correspondingly with the vehicle. It contained 35 claims, a number of which were for a combination between the switches and the traveling contact devices, and a number were for a combination of the traveling contact devices irrespective of the switches. The description of the devices comprising the unitary structure of the traveling contact was practically identical with that in the patent granted April 11, 1893, and the drawings illustrating the same were identical.

Subsequent to the decisions referred to, and on September 28, 1900, the complainant applied for the reissued patent now in suit. The specification omits descriptive matter contained in the specification of the original, and contains new matter by way of disclaimer. Instead of the detailed description of the spring and weight which has been quoted, the new specification reads as follows:

"To the lower end of the arm, F, is attached a suitable tension device; but as the particular form and arrangement of this tension device are not essential to the present device, it need not be further described."

It contains also the following disclaimer:

"The combination with the contact carrying arm of a weighted spring, or of a weight and spring, as the special means for holding the contact arm pressed upward, and enabling the motorman to lower the contact wheel, are not claimed herein, because this special improvement has been claimed already in the patent No. 424,695, dated April 1, 1890, which was issued as a division of this application. Nor is there claimed herein the so arranging of the weight or spring (as by causing it to work through suitable grooves or rollers arranged in the car roof) as to tend to cause the arm to assume a normal central position, or one parallel with the longitudinal center of the car, as that has also been claimed already in the said divisional patent No. 424,695, being an arrangement which is of especial value only in connection with the switches to which said divisional patent more particularly relates. In the present application no special form or arrangement of tension device is essential to or a part of the invention claimed."

The claims are as follows:

"(1) In an electric railway, the combination of a car, an overhead conductor above the car, an upwardly extending and laterally swinging arm mounted on the roof of the car, and carrying a contact device at its free end, and making underneath contact with the conductor, substantially as described. (2) In an electric railway, the combination of a car, an electric overhead conductor above the car and parallel with the line of travel, an upwardly extending trailing arm carrying a contact device at its free end, adapted to make underneath contact with the conductor, said arm being supported on the car on vertical and transverse axes, so as to permit said contact device to follow the position of the conductor, notwithstanding the great variations of height and of lateral displacement thereof, substantially as described."

The question whether the inventions of the two claims had been patented previously to the original patent depends upon the construction which is to be given to these claims. It was the purpose of the reissue so to modify some of the claims of the original patent that they should no longer specify the same invention claimed in the patent granted to Van Depoele April 1, 1890. Although in claim 4 of the original patent the tension devices were not in terms an element of the claim, it was

held by this court in Thomson-Houston Electric Company v. Union Railway Co., 86 Fed. 636, 30 C. C. A. 313, that the device was an element of the claim by implication, and for that reason that it was for the same invention which was covered by some of the claims of the patent of April 1, 1890. It seems to us quite clear that the object of the reissue has been effectually accomplished. The combination of the claims is by their terms one of which the four elements are the overhead conductor, the car, the swinging arm, the contact device proper, and these four elements alone. The omission in the reissue of the detailed description of the tension device in the original patent, and the disclaimer inserted in the reissue by way of abundant caution, are to be given due effect in determining the meaning and correct construction of the claims; and the claims are to be read in the light of the extrinsic facts surrounding their allowance by the Patent Office. Having been applied for and allowed expressly to differentiate them from some of the claims of the patent of April 1, 1890, the proceeding in the Patent Office would be a nugatory one if they are to be read as meaning to specify the identical invention claimed in the original patent. When the meaning of a grant or other document is so clearly deducible from its language as not to be capable of different interpretations, the construction which the parties to it have themselves placed upon it is of no assistance in its construction by a court; but when there is room for different interpretation the construction which the parties have placed upon its meaning is of persuasive, and often of controlling, force. It is true that it is to be inferred that neither the Commissioner of Patents nor the patentee contemplated the insertion of claims in the original patent which would be worthless because the inventions had been previously patented; but when the original was granted the attention of the parties to the grant had not been called to the question of the possible identity of some of the claims, and, owing to the difference of phraseology, the possibility of identity would naturally escape their attention. When, however, the reissue was granted, this question was specifically presented to their attention, and the construction which they have placed upon the meaning of the new claims is so definite and unmistakable that it must prevail in determining what construction the court should place upon them if their meaning is open to doubt. In view of these considerations, we are not constrained to decide that the new claims are, in substance, identical with claim 4 and other similar claims of the original; and, notwithstanding this court in its previous decision was of the opinion that claims in the original patent which did not in terms include the tension device as an element did include it by implication, we are not constrained to place the same meaning upon claims in the reissue which may be phrased substantially like some of the claims in the original.

The learned judge who heard the cause in the court below placed his decision mainly upon the effect which he deemed should be given to the decision of this court in the Union Railway Company Case, and was of the opinion that, because in that case this court had considered the tension device to be an element of the fourth claim of the original patent, it should also be considered an element of the claims of the reissue.

If the combination now claimed was new and useful, Van Depoele was entitled to make a claim for it, as for a subcombination, notwithstanding additional means may have been necessary to place the specific parts in co-operative relations with the overhead conductor to effect a traveling contact.    As the means for doing this are described in the patent, and as at the date of the patent tension devices of various kinds for maintaining the normal relations between the contact device and the overhead conductor were well known in the art, it was unnecessary to specify these means in the claims.    Thus the exact combination of Van Depoele, except a spring or weight, and with a magnet substituted therefor, had been described before the original patent issued, but subsequent to the application therefor, in the Hunter patent, No. 444,556. In the patent to Parrish and Munn of April 22, 1884, a tension device for producing an effectual and yielding engagement between the overhead conductor and the contact device, consisting of a swinging arm mounted upon the top of a car, the co-ordinated devices being designed for the transmission of an electric current through the swinging arm, had been described.    These tension devices were springs carried by braces extending from the post on which the swinging arm was mounted to the swinging arm.    In the patent to Atwood of August 26, 1890, a contact support is described which consists of an arm that is in itself a spring.

Many subcombinations, although new, are not useful, except to perform their appropriate functions in the machine of which they are a part.    The description in the patent of the whole machine, and of the means or mode by which the subcombination is brought into co-operative relation with the other parts, usually indicates how the subcombination may effect a useful result.    When this is so, the combination need not be operative alone, because (to use the language of Mr. Walker) "utility is justly ascribed to things which have their use in co-operating with other things to perform a useful work."    In Taylor v. Sawyer Spindle Co., 75 Fed. 301, 309, 22 C. C. A. 203, in considering the objection that the claims by themselves were void because not composing an operative mechanism, the court said:

"The law upon this subject is too well settled to be open for discussion. A patentee is not required to claim the entire machine in each claim.    Each of the claims at issue is for a complete combination of the spindle and its supporting tube and devices, and there was no necessity for expressing in terms the devices for revolving the spindle.    Any appropriate means for operating it will be understood.    The omission of the sleeve wheel does not affect the validity of either of the claims, which belong to that class where reference may be made to the specification to supply in a claim what is plain to any one skilled in the art."

The language of Mr. Justice Bradley in Loom Co. v. Higgins, 105 U. S. 585, 586, 26 L. Ed. 1177, is in point:

"If a mechanical engineer invents an improvement upon any of the appendages of a steam engine, such as the valve gear, the condenser, the steam chest, the walking beam, the parallel motion, or what not, he is not obliged, in order to make himself understood, to describe the engine, nor the particular appendage to which the improvement refers, nor its mode of connection with the principal machine.    These are already familiar to others skilled in that kind of machinery.    He may begin at the point where his invention begins, and describe what he has made that is new, and what it replaces of the

old. That which is common and well known is as if it were written out in the patent and delineated in the drawings."

In Thomson-Houston Electric Co. v. Elmira Railway Co., 71 Fed. 396, 405, 18 C. C. A. 145, 154, this court used this language:

"There may be subcombinations in a machine which are new and useful, and operate conjointly to perform some subordinate function. Such a subcombination, if not patented by a claim, might be appropriated by another without infringing a patent for the machine. Being for a different invention, it is the proper subject of a distinct patent."

The court was considering a case in which distinct patents had by the action of the Patent Office been carved out of one application, and it is obvious that the court did not mean to say that the subordinate invention could always be the subject of a distinct patent. In another part of the opinion the court said:

"An inventor, by describing an invention in a patent granted to him, does not necessarily preclude himself from patenting it subsequently. His omission to claim what he described may operate as a disclaimer, or an abandonment of the matter not claimed, but it has no such effect when it appears that the matter thus described, but not claimed, was the subject of a pending application in the Patent Office by him for another patent."

The original patent in the present case was a division of the application for the patent to Van Depoele of April 1, 1890, required by the Patent Office; consequently the description of the unitary structure or mechanism of the original patent, together with claims for combinations embracing the whole structure or apparatus, or combinations of the elements of the reissue with additional elements, such as the tension device, did not work an abandonment or disclaimer of the combination specified in the reissue. Suffolk Co. v. Hayden, 3 Wall. 315, 18 L. Ed. 76; Barbed Wire Case, 143 U. S. 275, 12 Sup. Ct. 443, 36 L. Ed. 154. Holding, as we do, that the tension device is not an element of the claims of the reissue, it is plain that the invention of those claims had not been patented previously to the original patent, because in none of the claims of the patent of April 1, 1890, was there one for a combination of the elements now claimed which did not also specify a tension device as an element.

The question of the novelty and utility of the inventions specified in the claims of the reissue was not greatly discussed in the argument at bar, but has been considered in the briefs of counsel. For the reasons we have stated, their utility cannot be impeached. They are useful because they are for subcombinations which are capable of doing useful work in the machine or structure of which they are a part. We have carefully examined the proofs in the record which bear upon the question of the novelty of the combination of the claims. We find nowhere in the prior art a combination between such an overhead conducting wire, underrunning grooved wheel contact device, and swinging arm mounted upon the car as are described in the patent. The swinging arm was old; the overhead wire in practically the same substantial arrangement with the tracks was old; a grooved contact wheel, but so mounted as to run

upon a track beneath the car, was old; and, as has been shown, tension devices to hold contact devices in engagement with conductors were old. But the history of the prior and subsequent art. shows that Van Depoele devised a construction and arrangement of these parts such as others seeking to accomplish the same result had failed to conceive. As this court pointed out in Thomson-Houston Electric Company v. Kelsey Electric Railway Specialty Company, 75 Fed. 1006, 22 C. C. A. 1, Van Depoele's combination of devices proved to be one of great utility, and which superseded pre-existing attempts at trolley road equipment. Considered with. respect to the devices of the combinations now claimed, the nearest approximation to the inventions is shown in the patent to Parrish and Munn, to which we have referred. That patent shows an overhead conducting wire located above each of the rails of the track, and an arm mounted upon the car so as to swing vertically and laterally. But it shows no grooved contact wheel, and, indeed, it has no distinct contact device, the arm being a straight rod, which of itself is the conducting arm. The patentees in a later patent describe a friction plate attached to the end of the arm as an improved means of contact between the arm and the overhead wire. In neither patent is there shown an underrunning contact device, the parts being arranged for an overrunning contact between the arm and the conducting wire. The mechanism of these patents was designed for use in a system of train signaling, and, while it contains what in general terms are the devices of the present combination, the devices are so essentially different in construction and arrangement as hardly to afford a suggestion of value for use in supplying the operating current in a trolley system. What Van Depoele did was something more than a mere mechanical adaptation of the several parts. He was the first to point out to the inventors in this branch of the electrical art how modifications of construction and arrangement could be introduced which would substitute success for failure.

The question next arises whether the inventions of the two claims are different from any which were described and intended to be claimed in the original. That the invention was described in the original cannot well be questioned. It was also claimed in the original in terms, but the court in the Union Railway Co. Case modified the claims as expressed by incorporating a tension device into them by implication. The court did not express any opinion that the claim was void upon its face, and the opinion apparently proceeded upon the reasoning that, as there would be no combination between the parts without a suitable tension device, and as it was the combination which was claimed, the tension device was to be deemed incorporated into the claims, notwithstanding it was not in terms included, applying the rule which is found, among other authorities, in Hartshorn v. Saginaw Barrel Co., 119 U. S. 678, 7 Sup. Ct. 421, 30 L. Ed. 539, and Consolidated Roller Mill Co. v. Walker, 138 U. S. 124, 133, 11 Sup. Ct. 292, 34 L. Ed. 920. We are not now called upon either to question or to reaffirm the correctness of that decision. It suffices for present purposes that the patentee not only

described the same invention as is described in the reissue (with an amplification now omitted as to the details of construction and arrangement of the tension device), but also endeavored to claim the combination now claimed. Unless a reissue is invalid because unimportant· changes are made in the descriptive matter and the language of the claims so as to express beyond any chance of misapprehension what the patentee intended to claim in the original, there is nothing to militate against the present reissue. It is urged for the appellee that there was no statutory ground for a reissue, because the specification for the original was not in any sense defective. If it should be conceded that the changes in the description of the reissue are of no materiality, and that the claims are identically such as some of the claims of the original, the circumstance would not impeach their validity. In many cases where the new claims in a reissue have been held invalid, the claims repeated from the original have been sustained. It suffices to refer to Gage v. Herring, 107 U. S. 640, 2 Sup. Ct. 819, 27 L. Ed. 601; Mahn v. Harwood, 112 U. S. 354, 6 Sup. Ct. 451, 28 L. Ed. 665. A patentee who reissues his patent for the purpose of correcting a clerical error or improving the phraseology of his description may do what is unnecessary, but the public are not injured. Although the commissioner exceeds his statutory authority by granting a reissue for an invention which was not described or intended to be claimed in the original patent, he does not do so by permitting a change in the phraseology for the purpose of defining more perfectly what was described and claimed in the original. When patents were issued by the Secretary of State it was held that the power to correct a mistake resided in that officer, irrespective of the statute. Grant v. Raymond, 6 Pet. 243, 8 L. Ed. 376. By the laws creating the office of Commissioner of Patents, and transferring to the Secretary of the Interior the power previously exercised by the Secretary of State, it has devolved upon the commissioner to superintend, execute, and perform all acts respecting the granting and issuing of patents, subject to revision by the Secretary of the Interior. Original power was conferred upon him to grant reissue by permissive language. By the act of July. 8, 1870 (16 Stat. 205, c. 230), the permissive words were substituted by the mandatory words of the statute as it now exists. It is the effect of this legislation to delegate to the commissioner, subject to the interposition of the Secretary of the Interior, all those acts with respect to the issuing of patents which originally devolved upon the Secretary of State. If the claims in a reissue are valid which were contained in the original notwithstanding its new claims are invalid, it would seem to follow that, where there are no new claims in the reissue all the claims should be valid, although in attempting to correct a mistake the commissioner has done nothing more than to introduce unimportant changes into the description.

No question has been raised as to any laches upon the part of the complainant in obtaining the reissue, and infringement by the defendant is not contested. If the reissue is not invalid, and the in-

ventions of the claim were not covered by the claims of the patent of April 1, 1890, the complainant is entitled to a decree for an injunction and accounting.

The decree of the court below is reversed, with costs, and with instructions to decree conformably with this opinion.