### THOMSON-HOUSTON ELECTRIC CO. v. STERLING-MEAKER CO.

(Circuit Court, D. New Jersey. February 2, 1907.)

PATENTS—VALIDITY OF REISSUE—LACHES.

 The Van Depoele reissued patent No. 11,872 (original No. 495,443), for a traveling contact for electric railways, is void because of the delay in making application therefor, which was not until seven years after the issuance of the original, and more than three years after it had been declared invalid by a Circuit Court of Appeals, during which time the owner was prosecuting suits for infringement in other circuits, which also terminated adversely before the application was made.

 [Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, §§ 201, 203.]

In Equity. On final hearing.
See 140 Fed. 554.

Betts, Sheffield & Betts, for complainant.
Stephen J. Cox and Howard P. Denison, for defendant.

LANNING, District Judge. The complainant charges the defendant with infringement of reissued patent No. 11,872, granted to the complainant November 13, 1900, on an application filed September 28, 1900. The original patent was No. 495,443, and was granted April 11, 1893. Both patents have been the subjects of much litigation. In the present suit the defendant urges as one of its defenses that the reissued patent is void because of laches on the part of the complainant in applying for it. If this point is established, it is unnecessary to examine the other defenses.

The original patent was granted to the complainant, as assignee of the administrators of the inventor, Charles J. Van Depoele. The application for the patent was filed March 12, 1887. While pending in the Patent Office it was divided, and on April 1, 1890, patent No. 424,695 was granted to Van Depoele upon the divisional application, as the following statement in the specification of patent No. 495,443 shows:

"My present invention relates to electric railways of the class in which a suspended conductor is used to convey the working current, a traveling contact carried by the car for taking off the current for use in operating the motor by which the car is propelled, and the return circuit completed through the rails. The invention consists more particularly in an improved traveling contact and in improved arrangement and construction of the switches by which the said traveling contact is directed onto the proper conductor. These

devices for switching the traveling contact from one conductor to another have been already claimed in my patent No. 424,695, which was issued as a division of this application on April 1, 1890. I therefore do not lay any claim to them herein, but the description and illustration of them is retained to show how my traveling contact is adapted to meet one of the essential requirements of railway service without special arrangements or other complications."

Patent No. 495,443 had 16 claims, of which claims 2, 4, 6, 7, 8, 12, and 16 have been held to be invalid. To bring into clear view the ground on which laches in applying for reissued patent No. 11,872 is charged, a brief statement of the litigation concerning patent No. 495,443 is necessary. The decisions have been as follows:

First decision, December 7, 1895, in Thomson-Houston Electric Co. v. Winchester Ave. Railway Co., 71 Fed. 192, by the Circuit Court, District of Connecticut, on final hearing, sustaining claims 6, 7, 8, 12, and 16.

Second decision, March 2, 1896, in Thomson-Houston Electric Co. v. Kelsey Electric Railway Specialty Co., 72 Fed. 1016, by the Circuit Court, District of Connecticut, granting preliminary injunction for contributory infringement.

Third decision, May 30, 1896, in Thomson-Houston Electric Co. v. Union Railway Co., 78 Fed. 363, by the Circuit Court, Southern District of New York, granting preliminary injunction on the strength of a prior adjudication in that district in another suit which does not seem to have been reported.

Fourth decision, July 18, 1896, in Thomson-Houston Electric Co. v. Ohio Brass Co., 78 Fed. 139, by the Circuit Court, Northern District of Ohio, granting preliminary injunction for contributory infringement of claims 6, 7, 8, 12, and 16, on the strength of the adjudication by the first decision above mentioned.

Fifth decision, July 29, 1896, in Thomson-Houston Electric Co. v. Kelsey Electric Railway Specialty Co., 75 Fed. 1005, 22 C. C. A. 1, by the Circuit Court of Appeals for the Second Circuit, modifying the second decision above mentioned so as to make the injunction less sweeping, but without discussing the validity of the patent.

Sixth decision, November 14, 1896, in Thomson-Houston Electric Co. v. Union Railway Co., 78 Fed. 365, by the Circuit Court, Southern District of New York, widening the scope of the preliminary injunction granted by the third decision above mentioned.

Seventh decision, January 14, 1897, in Thomson-Houston Electric Co. v. Johnson Co., 78 Fed. 361, by the Circuit Court, Western District of Pennsylvania, granting preliminary injunction on the strength of the adjudication by the first decision above mentioned.

Eighth decision, May 17, 1897, in Thomson-Houston Electric Co. v. Ohio Brass Co., 80 Fed. 712, 730, 26 C. C. A. 107, by the Circuit Court of Appeals for the Sixth Circuit, affirming the order for preliminary injunction granted by the fourth decision above mentioned. The court, however, refrained from expressing any opinion as to the validity of patent No. 495,443, saying:

"We are unwilling, upon an appeal from a preliminary injunction heard upon affidavits, and without a full review of the art, and without a fuller argu-

ment and closer consideration of the claims and specifications, to decide the question mooted. * * * The second patent (No. 495,443) was sustained as valid, after a full hearing on the merits, before so good and experienced a patent judge as Judge Townsend, of Connecticut [citing the first decision above]. This certainly justified the court below in assuming the validity of the patent on a motion for preliminary injunction. It is well settled that, on appeals like this, this court will ordinarily look into the case merely to see whether the discretion of the court below in issuing or withholding the order of preliminary injunction has been abused, and that only in exceptional cases, in which a controlling question of law may be as fully and fairly considered as upon final hearing, and the court has no doubt upon it, will it finally dispose of the injunction and the case on a hearing like this. Questions on appeals of this character are ordinarily to be treated in this court from the standpoint from which they were viewed by the Circuit Court, and the decision on the merits by a Circuit Court of another circuit sustaining the patent is therefore usually of controlling weight here, as it should be in the court below."

Ninth decision, July 21, 1897, in Thomson-Houston Electric Co. v. Hoosick Railway Co., 82 Fed. 461, 27 C. C. A. 419, by the Circuit Court of Appeals for the Second Circuit, reversing an order for preliminary injunction by the Circuit Court of the Northern District of New York, and holding that claims 6, 7, 8, 12, and 16 of patent No. 495,443 were for the same invention described in patent No. 424,695, issued on the divisional application above mentioned, and that for that reason those claims were void. In considering the rule of practice on appeals from orders for preliminary injunctions, it was said:

"The preliminary question arises whether upon this appeal the court should undertake to examine, and in a sense to review, collaterally, the decision in the Connecticut cause [the first decision above mentioned], or should confine itself to the inquiry whether, from the standpoint of the court below, the order was properly granted. We had occasion to consider this question in American Paper Pail & Box Co. v. National Folding Box & Paper Co., 51 Fed. 229, 2 C. C. A. 165, and adhere to the views which were then expressed. We said: 'While the Circuit Court, upon a motion for injunction, might deem itself constrained, contrary to its own judgment, to adopt the rulings of another Circuit Court upon questions of law made at final hearing, this court is at liberty to re-examine such rulings, dispose of the questions of law conformably to its own convictions, and accord to the former adjudication such weight as, in its own judgment, it was entitled to upon the motion.' The former adjudication was entitled to great weight upon the application for the preliminary injunction, and justified, although it did not necessarily control, the decision. If it had been founded upon evidence not before the court upon the application for the injunction, or not so fully before it, it could not have been intelligently considered by that court, and there would have been no record here upon which it could be re-examined. But the question whether two patents are for the same invention is a question which is to be determined by a comparison of the documents themselves. There may be cases in which it is necessary to resort to extrinsic evidence to ascertain the meaning and the true construction of the documents. The present was not such a case. The patents are unambiguous, and even the file wrappers, which are in the record are of little value as extrinsic evidence."

The court then proceeded to compare patents Nos. 424,695 and 495,443, and concluded, as already stated, that claims 6, 7, 8, 12, and 16 of the later patent were covered by the former patent, and, consequently, that they were void.

Tenth decision, August 5, 1897, in Thomson-Houston Electric Co. v. Jeffrey Manufacturing Co., 144 Fed. 130, by the Circuit Court,

Southern District of Ohio, refusing a preliminary injunction because of the ninth decision above mentioned.

Eleventh decision, September 21, 1897, in Johnson Co. v. Thomson-Houston Electric Co., 84 Fed. 16, 27 C. C. A. 681, by the Circuit Court of Appeals for the Third Circuit, reversing, on consent of parties, the preliminary injunction granted by the seventh decision above mentioned because of the ninth decision.

Twelfth decision, February 7, 1898, in Thomson-Houston Electric Co. v. Union Railway Co., 84 Fed. 888, by the Circuit Court, Southern District of New York, granting a preliminary injunction on claims 2 and 4 of patent No. 495,443.

Thirteenth decision, April 7, 1898, in Thomson-Houston Electric Co. v. Union Railway Co., 86 Fed. 636, 30 C. C. A. 313, by the Circuit Court of Appeals for the Second Circuit; reversing the twelfth decision, and holding claims 2 and 4 to be void for the same reason that claims 6, 7, 8, 12, and 16 had been held void in the ninth decision.

Fourteenth decision, July 6, 1898, in Thomson-Houston Electric Co. v. Mahar, 112 Fed. 534, by the Circuit Court, Southern District of New York, dismissing bill of complaint on final hearing on the ground that claims 2, 4, 6, 7, 8, 12, and 16 had all been held invalid by the ninth and thirteenth decisions.

Fifteenth decision, March 15, 1900, in Thomson-Houston Electric Co. v. Jeffrey Mfg. Co., 101 Fed. 121, 41 C. C. A. 247, by the Circuit Court of Appeals for the Sixth Circuit, affirming the final decree of the Circuit Court of the Southern District of Ohio, which dismissed the bill of complaint, and holding that claims 2, 4, 8, 12, and 16 of patent No. 495,443 were invalid, because covered by patent No. 424,-695. This decision was evidently in the same case as was the tenth decision, where a preliminary injunction was denied August 5, 1897, because of the ninth decision.

The complainant's next step was to prepare a petition to the Commissioner of Patents praying for leave to surrender its patent No. 495,443, and for a reissue. This was on July 31, 1900. On September 28, 1900, the petition was filed with the Commissioner, accompanied by a specification and the affidavit of Mr. C. A. Coffin, president of the complainant company, on which papers the reissued patent No. 11,872 was granted November 13, 1900. The litigation concerning the reissued patent has been as follows:

Sixteenth decision, August 12, 1903, in Thomson-Houston Electric Co. v. Black River Traction Co., 124 Fed. 495, by the Circuit Court, Southern District of New York, holding, on final hearing, the reissued patent to be void for the same reason that the original was held void; that is, because it was covered by patent No. 424,695. The decree dismissed the bill of complaint.

Seventeenth decision, January 23, 1905, in Thomson-Houston Electric Co. v. Black River Traction Co., 135 Fed. 759, 68 C. C. A. 461, by the Circuit Court of Appeals for the Second Circuit, reversing the sixteenth decision, and holding the reissued patent valid. The court, however, said:

"No question has been raised as to any laches upon the part of the complainant in obtaining the reissue."

Eighteenth decision, May 8, 1905, in Thomson-Houston Electric Co. v. International Trolley Controller Co., 141 Fed. 128, by the Circuit Court, Western District of New York, granting a preliminary injunction because of the adjudication by the seventeenth decision, and holding, also, that the complainant, in view of the protracted litigation on patent No. 495,443, was not chargeable with laches in applying for the reissued patent.

Nineteenth decision, January 22, 1906, in the case now under consideration (Thomson-Houston Electric Co. v. Sterling-Meaker Co., 140 Fed. 554), on an application for a preliminary injunction, in which this court held that, while on that application it would assume the reissued patent to be valid because of the seventeenth decision, and, because of the eighteenth decision, would also assume the absence of laches on the part of the complainant, the preliminary injunction should be denied because of substantial doubt on the question of infringement.

Twentieth decision, February 20, 1906, in Thomson-Houston Electric Co. v. Holland, 143 Fed. 903, in which because of the adjudication by the seventeenth decision, a preliminary injunction was allowed.

Twenty-first and last decision, November 30, 1906, in Milloy Electric Co. v. Thomson-Houston Electric Co., 148 Fed. 843, rendered by the Circuit Court of Appeals for the Sixth Circuit. This was an appeal from an order granting a preliminary injunction. The opinion deals directly with the question of laches. After referring to the decision in the Hoosick Railway Company's Case (ninth decision), the court says:

"In the litigation which preceded that decision, commencing as early as 1895, the attention of the patentee was directly challenged to the specifications of the patent and they were elaborately canvassed. If any error had been committed in the language employed or in claiming more than was new, it was as discoverable then as it ever became, unless, indeed, a patentee has the right to await the result which the courts may reach after prolonged litigation and examination of the subject. If he has such a right, notwithstanding he knows the grounds on which the error is predicated, it is pertinent to inquire how long and to what number of courts he can continue to submit the question for judicial determination. Here the patentee held its ground and insisted upon the patent as it stood. It carried its case to the highest court that it could without a certiorari to the Supreme Court, which it did not prosecute. This was more than three years before the application for reissue was filed. Instead of then applying for a reissue, it took its chances in another co-ordinate jurisdiction, and, failing there, resorted to the proceeding for re-issuing the patent. The patent of 1890, No 424,695, had been held valid in respect to the invention covered by claims 2 and 4 of the patent of 1893 But the appellee chose to take its chances of prolonging its monopoly by continuing its effort to establish the later patent, which the court had held to be invalid We cannot think that a patentee may thus experiment with his patent. On the contrary. we think that, when the grounds are disclosed for thinking there may be an error or mistake, he is bound in duty to the public to correct it by obtaining a reissue or to adhere to his original patent; and, if he declines to correct it, he should be deemed to be standing upon it as the measure of his right. A different doctrine would go far to defeat the object of the rule which requires the patentee to define his invention with such distinctness that other inventors, and the public as well, may know its scope and limitations."

This history shows that the complainant, with a decision rendered by the Circuit Court of Appeals for the Second Circuit in the Hoosick Railway Company's Case, on July 21, 1897, holding claims 6, 7, 8, 12,

and 16 to be void; with its application for a preliminary injunction in the Jeffrey Manufacturing Company's Case refused on August 5, 1897; assenting to a reversal of the order for preliminary injunction in the Johnson Company's Case on September 21, 1897; with a reversal of the order for preliminary injunction in the Union Railway Company's Case on April 7, 1898; with its bill dismissed in the Mahar Case on July 6, 1898, on a sweeping opinion that claims 2, 4, 6, 7, 8, 12, and 16 were all invalid; and with all of these decisions resting on the adjudication that patent No. 495,443 was anticipated by its own patent No. 424,695—still asserted such adjudication to be erroneous, clung fast to the later patent, contended for its validity, and prosecuted to the highest court of another circuit the Jeffrey Manufacturing Company's Case, in which, on March 15, 1900, nearly three years after a preliminary injunction in that case had been denied, it again met overwhelming defeat.

It is not intended to intimate that the complainant violated any rule of law or of propriety in its continued litigation to save its patent No. 495,443. But a fair question is: Did it not, by its protracted litigation concerning that patent after it had been adjudged invalid by the Circuit Court of Appeals of the Second Circuit, impliedly abandon any right to a reissue that it might have had by promptly filing, after adjudication of invalidity, an application for a reissue? Do not these facts show that the complainant chose to stand on the asserted validity of its former patent? And, having taken that stand, can it prevail with its present plea that it delayed applying for a reissue for more than three years because during all that time it believed the adjudication of the highest court in one of our nine circuits to be erroneous and hoped to secure a favorable decision in the highest court of another circuit? May a patentee prosecute appeals to the Circuit Court of Appeals in one circuit after another, and, after having been defeated in all of them, then file his application for a reissue? Section 4916 of the Revised Statutes [U. S. Comp. St. 1901, p. 3393] provides that:

"Whenever any patent is inoperative or invalid, by reason of a defective or insufficient specification, or by reason of the patentee claiming as his own invention or discovery more than he had a right to claim as new, if the error has arisen by inadvertence, accident, or mistake, and without any fraudulent or deceptive intention, the Commissioner shall, on the surrender of such patent and the payment of the duty required by law, cause a new patent for the same invention, and in accordance with the correct specification, to be issued to the patentee * * * for the unexpired part of the term of the original patent."

Patent No. 495,443 was held invalid because its allowance was a case of double patenting. The invalid patent and the one anticipating it were both owned by the complainant, and, indeed, originated in one application. The infirmity of the second patent was disclosed by comparing it with the former patent. The persistent course of the complainant in asserting, in the various causes argued and decided after July 21, 1897, that its later patent was valid, is inconsistent with the facts on which section 4916 authorizes a reissue. In all those three years of litigation the complainant by its conduct was saying that no error in its patent No. 495,443 had arisen by any "inadvertence, ac-

cident, or mistake" on its part, and that the error was solely that of the Circuit Court of Appeals for the Second Circuit. Indeed, in his affidavit annexed to the petition for the reissue, Mr. Coffin, after giving a history of the litigation concerning patent No. 495,443, says:

"Until the rendering of the said decisions of the Circuit Court of Appeals for the Second Circuit, in the suits against the Union Railway Company and against the Hoosick Railway Company, your petitioner, Thomson-Houston Electric Company, was satisfied that the subject-matters of letters patent Nos. 424,695 and 495,443 were distinct and separate; but, in order that the question of identity of the subject-matters of the claims of the two letters patent aforesaid should be determined upon final hearing after full proofs, your petitioner caused testimony to be taken, in a suit brought by it against the Jeffrey Manufacturing Company in the United States Circuit Court for the Southern District of Ohio, and brought the said cause on for final hearing, on pleadings and proofs, before his honor, Judge Thompson, who handed down an opinion dismissing the bill of complaint in said cause, and from the decree entered on said decision your petitioner appealed to the United States Circuit Court of Appeals for the Sixth Circuit."

He also says that:

"As matter of fact, in the Circuit Court of the United States for the District of Connecticut, in the suit of Thomson-Houston Electric Company v. Winchester Avenue Railroad Company et al., the defendants contended that the broadest form of the invention of Charles J. Van Depoele, patented in said letters patent No. 495,443, was inseparably involved in prior letters patent to the same inventor, among them being the letters patent No. 424,695 aforesaid."

The president of the complainant company thus admits that the particular infirmity of the later patent, on which it was finally adjudged invalid, was the subject of contention in the very first case of alleged infringement instituted by the complainant, and that after adjudication of invalidity by the highest court of one circuit it prepared another case in another circuit and prosecuted it to the highest court of that circuit. He says that the object of the latter prosecution was to get an adjudication on a final hearing and on an appeal from a final decree. If that were the sole object, why did not the complainant take an appeal from the sweeping final decree dismissing the bill in the Mahar Case, which must have been ready for appeal long before the Jeffrey Manufacturing Company's Case? I can conceive of no reason, except that an appeal in the Mahar Case (fourteenth decision) would have gone to the same high court that had already, on appeals from interlocutory orders granting preliminary injunctions, twice adjudged (ninth and thirteenth decisions) certain claims of its patent to be void, while an appeal in the Jeffrey Manufacturing Company's Case (fifteenth decision) would have gone to a court that had affirmed (eighth decision) an interlocutory order for a preliminary injunction.

Furthermore, Mr. Coffin, in his affidavit above referred to, after mentioning certain interference proceedings in the Patent Office while the application for patent No. 495,443 was pending there, says:

"During the pendency of the several interferences hereinbefore cited, and in order to meet the requirements of the Patent Office in the several interference proceedings, and in order to protect the rights of the said Charles J. Van Depoele in the inventions declared by the Patent Office (at the request of persons other than Charles J. Van Depoele, or those acting for him or on his behalf) to be at issue in the said several interferences, the said Charles J. Van Depoele,

or those acting for him or on his behalf, were required to amend the specification and claims of the application, serial No. 230,649 (which resulted in the grant of the letters patent No. 495,443), to the end that the claims of the said application, serial No. 230,649, should not only be distinct and separate from the claims of the subsidiary application, serial No. 288,759 (which resulted in the grant of the letters patent No. 424,695), but should also cover and include the issues involved in the several interferences; that, at the conclusion of the interference proceedings in which the divisional application, serial No. 288,759, was involved, and before the grant of the letters patent No. 424,-695, the solicitor for Charles J. Van Depoele instructed the Patent Office to erase from the specification of the patent application No. 230,649 certain allowed claims which formed part of the divisional application, but that the Patent Office neglected to do so."

What claims were thus directed to be erased Mr. Coffin does not say. They may have been some or all of the claims subsequently held to have been covered by patent No. 424,695. The patentee knew, or was bound to know, within a short time after receiving patent No. 495,443, that the claims which his solicitor had instructed the Patent Office to erase, because they formed a part of patent No. 424,695, had been retained in patent No. 495,443. He therefore knew, or was bound to know, that a question existed as to whether a portion of his claims were not void for double patenting. If the claims which the patentee's solicitor instructed the Patent Office to erase, and which that office for some unexplained reason failed to erase, were wholly or in part the claims that were subsequently adjudicated to be invalid because of double patenting, the application for a reissue, after years of struggle in the courts to save what had thus been directed to be erased, certainly should have been refused. The failure of the proofs now before the court to show what claims of patent No. 495,443 were ordered to be erased does not help the complainant. If they were not the claims subsequently held to be void, the complainant should have shown that fact. As the proofs now stand, they seem to show that the patentee had good reason to doubt the validity of his patent as to some of its claims from the date of its issue, and the affidavit of Mr. Coffin shows that he, the complainant's president, has had knowledge of the facts on which that doubt must have existed. With knowledge of these facts, the complainant has continued its litigation. In Wollensak v. Sargent, 151 U. S. 221, 14 Sup. Ct. 291, 38 L. Ed. 137, it is said that a patentee cannot retain his right to correct a mistake in his patent while he speculates on the chances of including omitted claims in a reissue of another patent. With equal propriety it may be said, I think, that a patentee cannot retain his right to a reissue of a particular patent while he speculates on the chances of saving that patent in its original form by long and costly suits in sundry courts. This was the view taken by the Circuit Court of Appeals for the Sixth Circuit in the Milloy Electric Company's Case; and, although the complainant's counsel contend that the decision in that case is erroneous, it commends itself to my judgment, and I think I ought to follow it.

The bill of complaint will be dismissed, with costs.