MORSE CHAIN CO. v. LINK BELT CO.

(Circuit Court, S. D. New York. October 31, 1910.)

1. PATENTS (§ 141*)—REISSUES—IDENTITY OF INVENTION.

A reissue patent cannot be issued for an invention other than the one actually described in the original patent.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 206–213; Dec. Dig. § 141.*]

2. PATENTS (§ 328*) — REISSUES — IDENTITY OF INVENTION — CHAIN DRIVING GEAR.

The Morse reissue patent, No. 12,844 (original No. 757,762), for a chain-driving gear for transmission of power, is void as not being for the same invention as the original patent, which was clearly limited to a two-part pintle.

In Equity. Suit by the Morse Chain Company against the Link Belt Company. Decree for defendant.

J. Edgar Bull and Paul Synnestvedt, for complainant.

Charles Howson, for defendant.

HAND, District Judge. In this suit the complainant should succeed I believe on every point raised except one, though that is unfortunately for him fatal to his success. This objection is that the reissue is not for "the same invention" as the original patent.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Morse's papers upon reissue on their face show ground enough for the commissioner to hold that he had originally conceived his invention in broader terms than merely as a two-part pintle. The issue before the commissioner was what was, in fact, Morse's actual intention when the papers were drawn, and upon the record there was some evidence that his intention included a three-part pintle. Upon that issue the commissioner's decision became final and conclusive, and it is not now open to review by me. Seymour v. Osborne, 11 Wall. 516, 20 L. Ed. 33; Russell v. Dodge, 93 U. S. 460, 23 L. Ed. 973; Topliff v. Topliff, 145 U. S. 156, 12 Sup. Ct. 825, 36 L. Ed. 658. Therefore I shall assume that Morse's first patent failed to set forth adequately the original invention as he conceived it, and that this mistake arose from such inadvertence, accident, or mistake in reducing his intention to writing as a court of equity will relieve. Miller v. Brass Co., 104 U. S. 350, 26 L. Ed. 783. This would be enough to justify the reissue, provided that the invention actually described in the original patent was the same as that described in the reissue, but not otherwise. Corbin Cabinet Lock Co. v. Eagle Lock Co., 150 U. S. 38, 14 Sup. Ct. 28, 37 L. Ed. 989; Dunham v. Denison Mfg. Co., 154 U. S. 103, 14 Sup. Ct. 986, 38 L. Ed. 924. The suit in the Seventh Circuit conclusively determined that the original patent did not describe an invention which included the defendant's structure. If, in fact, it did adequately describe some invention, there seems no escape from the conclusion that the invention which it did describe was not the same as the invention which Morse had in mind. No one can seriously urge that the original patent did not in fact completely describe a two-part pintle. That was the invention shown in the original patent, and that, it has been held, was not the invention which the defendant is using.

The only possible question, therefore, is whether there is enough indication in the patent itself to show that Morse was trying, though unsuccessfully, to express the idea of a pintle of more than two parts. If so, then the invention thus partially and imperfectly described became fully described in the reissue and there was no departure. However, unless that idea is to be found somewhere in the original patent, I cannot say that the reissue, which is clearly broader, is for the same invention as the original. Now, the fact is that the original patent was singularly express in its limitation to pintles of two parts. At the very outset the patentee so characterizes his invention, when he says:

"This invention relates to an improvement in driving chains for general power transmission and particularly to chains of this class, wherein the pintle consists of two parts bearing upon one another throughout their length."

There is throughout the specification no indefiniteness of expression, but the pintle is referred to uniformly as a two-part pintle just as it is shown in the drawings. It is only in the claims that the least suggestion of ambiguity can be found. Claims 1, 2, 3, 10, and 11 refer to pintles "formed of separate parts," and this might be thought to give color to the contention that the invention covered was for a pintle of more than two parts. However, the context of the phrase, "pintles formed in separate parts," in claims 1, 2, 3, and 11, remove any possible ambiguity, and show that in those cases at least the patentee has

in mind only the two-part pintle. Thus, in claim 1 the words which follow this phrase are as follows:

"Of which one part engages with the plates of one link only and bears upon the other part of the pintle."

The contrast between the words, "one part" and the "other part," particularly as the two parts bear upon each other, shows that only two could have been intended. In claims 2 and 3 the words are, "Pintles formed in separate parts adapted to turn one upon the other," and later on they are spoken of as "both parts of the pintles." Claim 11 closes with the words, "one part of each pintle and to allow free movement of the other part thereof." It is therefore apparent that the phrase "formed in separate parts" was not used by the patentee as signifying more than two parts unless it were in claim 10; nor has Morse ever asserted the contrary.

The history of this claim will show whether by it Morse intended something different by the same words, i. e., to include more than two parts in his pintle. Originally the specifications were followed by eight claims, each specifically referring to a pintle of two parts. Some 17 months later claims 9 and 10 were added, also specifying two-part pintles. The action of April 28, 1903, proves, if such proof indeed be necessary, that a two-part pintle was all that was in any one's mind in regard to claims 9 and 10.

On February 18, 1904, claims 9 and 10 were amended and claim 11 added. Claim 10 appears as a "pintle formed in separate parts." In spite of the context it might be thought that to keep the phrase "two parts" in claim 9, and to change it in claim 10, indicated a change of intention, but the use of the same phrase, "pintle formed in separate parts," in claim 11, disproves any such inference, because its context there proves that it meant only a two-part pintle. Moreover, the letter accompanying these claims proves conclusively that the patentee considered only "pintles formed in two parts" (see the first paragraph on page 235 of the defendant's record).

To complete the proof, the patentee on March 17, 1904, amended claims 1, 2, and 3, so that the words "pintles formed in separate parts" replaced "two-part" pintles, but obviously without the least change of meaning. The upshot of the whole of this is that it is clear beyond any reasonable doubt that the patent passed through the office and issued without the least intimation of the pintle's being in more than two parts and with the clearest possible limitation of the patent to a two-part pintle.

Morse did then succeed in describing the species, two-part, of the genus, extended-bearing pintles, and only that. In so doing he necessarily disclosed the elements, which made up the genus, since the species includes all the elements of the genus, but he gave no suggestion that he had conceived of those elements separately, or that he meant to claim them as an invention. Now he does conceive of them separately and claim them. It is true that, when the original claims are too broad, a reissue is good which narrows them. Edison v. Mutoscope Co., 151 Fed. 767, 81 C. C. A. 391. Strictly and literally speaking, that, of course also changes the invention so that it is not "the same," but there

is a great practical difference between that and the precise inverse which was the effort here, because the narrowing of claims does not result in including any structures or processes which the original claims left open. That result is the reason for the greater jealousy with which the law has always looked at broadened claims, even though there be no ground in logic for the distinction. If the claims may be broadened without any suggestion of it in the original, the only limit to the expansion which the claims may take is that they must not include elements not originally disclosed. By omitting as many of the disclosed elements as the inventor pleases, he may extend the scope of his patent, solely at the discretion of the commissioner, which certainly the statute never intended. I have found no cases in which the basis of such broadened claims was not found in the original patent itself, showing at least in some inadequate and fragmentary way that the invention there disclosed was that claimed in the reissue. I do not believe that it is enough that the original be related to the reissue as species to genus, whatever may be law for the inverse relation. Since here, as I have shown, the original had not the faintest suggestion of anything but a two-part pintle, I am very sorry to feel obliged to find the reissue void.

In the case of Thomson-Houston Elec. Co. v. Black River Transportation Co., 135 Fed. 759, 68 C. C. A. 461, the Circuit Court of Appeals for this circuit upheld a reissue which omitted one of the elements of the combination disclosed and impliedly claimed in the original. Whatever may be said as to the facts, it is quite clear that the court had no intention of holding that this could be done when the original showed no signs of disclosing the invention actually patented. At the top of page 766 of 135 Fed., and on pages 467, 468, of 68 C. C. A., Judge Wallace says:

"The patentee not only described the same invention as is described in the reissue (with an amplification now omitted as to the details of construction and arrangement of the tension device), but also endeavored to claim the combination now claimed."

Again on the same page he says that the commissioner may allow a reissue "by permitting a change in the phraseology for the purpose of defining more perfectly what was described and claimed in the original." None of this language is fairly applicable to the case at bar, if it be conceded, as I have tried to show, that the original had no suggestion of anything but a two-part pintle.

This would make only obiter the consideration of the other points raised. The invention was a meritorious one, and the inventor deserved better fortune than so far he has got. Unfortunately the law is the law, and no judge has the right to stretch it in a hard case. I shall therefore be obliged to dismiss the bill for want of equity, with costs.