# GIBBS v. MONTGOMERY WARD & CO.

District Court, D. Maryland. May 26, 1927.

No. 1006.

1. Patents ⟷91(1)—Party to infringement suit had burden of showing invention prior to date of admitted disclosure by adverse party.

In patent infringement suit, where disclosure by plaintiff on particular date was conceded, burden was on adverse party to show invention prior to that date.

2. Patents ⟷91(4)—Defendant's priority of invention of animal trap held not established.

Defendant in suit for infringement of patent for animal trap *held* not to have established invention prior to date on which plaintiff admittedly made disclosure.

3. Patents ⟷328—Gibbs patent, 1,540,690, claims 14 and 15, for animal traps, held invalid, and claim 16 valid and infringed; "to pivot."

Gibbs patent, No. 1,540,690, claims 14 and 15, for improvement in animal traps, *held* invalid, and claim 16 valid and infringed; "to pivot" meaning to turn or swing on a pivot.

4. Patents ⟷328—Gibbs patent, 1,540,690, claim 16, for animal trap, held not void for double patenting.

Gibbs patent, No. 1,540,690, claim 16, for animal trap, *held* not void for double patenting of matter covered by patent No. 1,458,286.

5. Patents ⟷120—Issuance of patent for matter disclosed, but not claimed, by prior patent, is not limited to cases where divisional applications are required by rules of Patent Office.

The grant of a subsequent patent for matter disclosed, but not claimed, in prior patent, is not limited to cases in which divisional applications are necessary under rules of Patent Office.

In Equity. Patent infringement suit by Walter A. Gibbs against Montgomery Ward & Co. Decree for plaintiff.

John T. Tucker, of Baltimore, Md., and K. N. Ware and Howson & Howson, all of Philadelphia, Pa., for plaintiff.

Charles H. Wilson, of New York City, and John E. Cross, of Baltimore, Md., for defendant.

SOPER, District Judge. The complainant in this case is the patentee of a number of letters patent relating to animal traps, and is engaged in the manufacture of traps under his patents, including the patent in suit. The defendant is the well-known Chicago mail order house, and has an established place of business in Baltimore. It sells infringing traps manufactured by the Triumph Trap Company of Oneida, N. Y., and the defense of the suit

is being conducted by that corporation. For convenience, the Triumph Trap Company will be called the defendant in this opinion. The patent in suit is No. 1,540,690, issued to Gibbs on June 2, 1925, upon an application filed November 12, 1920, for improvements in animal traps. The claims of the patent relied upon are claims 14, 15, and 16, which are as follows:

"14. In an animal trap, the combination was a pair of pivotally mounted jaws, of a closing lever embracing the jaws and pivotally mounted between the jaw pivots, a spring bearing against the back of the lever and adapted to elevate the lever to close the jaws, and means on the lever for preventing displacement of the spring from behind the lever.

"15. In an animal trap, the combination with a pair of pivotally mounted jaws, of a substantially flat closing lever embracing the jaws and pivotally mounted between the jaw pivots, a coiled spring having one end bearing against the back of the lever and adapted to elevate the latter to close the jaws, and a flange at the side of the lever to prevent displacement of the end of the spring from behind the lever.

"16. In an animal trap, the combination with a pair of pivotally mounted jaws, of a latch for maintaining the jaws in open relation, a treadle operatively associated with the latch and mounted between the jaws when the latter are open, a closing lever embracing the jaws and pivotally mounted at one side of the trap intermediate the jaw pivots and a spring adapted to actuate the lever to close the jaws."

The defendant claims that the patent in suit is invalid, and that the defendant's trap does not infringe. The invalidity of the patent is urged upon several grounds, to wit: (1) Priority of invention in the trap of the defendant; (2) the introduction in claims 14 and 15 of new matter not disclosed in the specification; (3) lack of invention; (4) double patenting of the same invention described in the prior patent to Gibbs, No. 1,458,286.

A brief account of the activities of the patentee prior to the filing of the patent application will make it easy to dispose of the defense of priority of invention. Gibbs is a construction or electrical engineer, with experience in the management of public service properties. He became interested in trapping as a sportsman, and bought a marsh for trapping muskrats in Dorchester county, Md. As early as the spring of 1916 he set to work to devise improvements in the animal traps on the market, and in 1917 and 1919, visited Oneida, N. Y., a center of the trap-making industry. He there met Holdridge G. Green, superintendent of the defendant's factory, on April 24, 1919, and endeavored to interest the defendant in his latest trap, quite similar to that covered by the patent in suit. Failing in this purpose, he employed Green and organized a factory in Chester, Pa., with Green's assistance and advice. Green left the employ of the defendant on May 29, 1919, and went to Chester on or about June 1. In the following fall, the manufacture of traps for sale in the Gibbs factory began, and it has since been actively engaged in the business.

Gibbs' patent was applied for November 12, 1920, and with one unimportant exception hereinafter mentioned, disclosed the same structure which Gibbs exhibited to Green on April 24, 1919. Green remained with Gibbs until October 1, 1919, when he returned to the defendant's employ and continued with them for a period of approximately five years. He filed an application for patent No. 481,582 in the Patent Office on June 28, 1921, covering the trap subsequently manufactured by the defendant.

[1, 2] Since it is conceded that Gibbs devised his trap prior to April 24, 1919, the burden of proof is upon the defendant to show beyond a reasonable doubt that Green made the invention prior thereto. Washburn v. Wire Co., 143 U. S. 275, 12 S. Ct. 443, 450, 36 L. Ed. 154. This burden the defendant fails to meet. It depends entirely upon the testimony of Green, who, in the case at bar, was uncertain whether the trap which became the subject of his application of 1920 was devised before or after April 24, 1919. He was less uncertain as a witness in interference proceedings in the Patent Office in 1926 between his application and the Gibbs patent, when he testified that his trap was devised in the latter part of May, 1919. The defense of priority, so far as the main invention is concerned, therefore falls.

The testimony is more confusing in regard to the unimportant element of the trap hereinbefore mentioned. This is described in the concluding words of claim 15 as "a flange at the side of the lever to prevent displacement of the end of the spring from behind the lever." The ends of the spring engage the back of the lever which closes the jaws of the trap and it was found desirable to flange the sides of the lever to prevent the displacement of the ends of the spring. It is conceded that the Green trap of May, 1919, contains such a flange, and

that the traps manufactured in the Gibbs factory did not contain this construction until the fall of 1919. There was testimony on the part of the complainant tending to show that in the winter of 1918–19, Gibbs manufactured at his marsh a number of traps equipped with flanges. Whether flanges first appeared in the Gibbs or in the Green trap, it is not necessary to decide for reasons which will hereafter appear.

These flanges also form the basis of the defense of new matter, since, in the defendant's view, they were not disclosed by the specifications of the patent, but were improperly introduced as a part of claims 14 and 15. This point was first raised by the Examiner in the Patent Office who was in doubt as to whether the drawings of the trap, as filed with the application for the patent, showed the flanges. After considerable hesitation, the Patent Office finally determined that the flanges were visible in the drawings. This conclusion the defendant challenges. Presumably the position of the Patent Office is correct, but here again it is not necessary to decide the issue, as will be hereinafter explained.

[3] Claims 14 and 15 must be held invalid for the substantial reason that they lack invention over the Rasmussen patent, No. 870,-251, of 1907. It is quite clear that the Rasmussen patent contains substantially the same combination of elements as claims 14 and 15, to wit: (1) A pair of pivotally mounted jaws; (2) a closing lever embracing the jaws and pivotally mounted between the jaw pivots; (3) a spring bearing against the back of the lever and adapted to elevate the lever to close the jaws. This conlusion is not seriously contested by the plaintiff. The only noticeable difference of any importance lies in the fourth element of claims 14 and 15, which specifies a means on the lever for preventing the displacement of the spring from behind the lever. The lever of the Rasmussen trap is not equipped with a flange, but it has means for preventing the displacement of the spring which perhaps may be considered as the equivalent of the flange. However this may be, it is beyond question that the addition of the flanges to the Gibbs trap was not in itself evidence of invention. It was a device easily within the skill of an ordinary mechanic. Claims 14 and 15 must therefore be declared invalid; and this decision renders unimportant the questions of priority and of new matter relating to the flange, already mentioned.

Claim 16 of the patent, however, remains, and it contains a combination of elements not anticipated in any one patent cited against it. It will be observed that it is distinguishable from claims 14 and 15 in that it provides that the closing lever shall be pivotally mounted at one side of the trap intermediate the jaw pivots. This feature of the trap, and that for an independent closing lever embracing the jaws, are the two elements of the trap which in combination have made it a success. The advantages are emphasized in the testimony. When the pin upon which the lever hinges is placed at the center of the trap, the distance to the point where the power is applied to the jaws of the trap is increased and thereby a more powerful spring is required. Again when the pivot pin is placed beneath the trap, it forms an extension which prevents the trap from lying flat on the ground, or requires an excavation to be made in which water may collect, and the trap may be frozen. In the third place, when the pin is placed in the center of the trap, the treadle is held up and does not fall, as in the Gibbs trap, with the result that when the animal steps upon the treadle, its foot is thrust up and the chances of escape are increased.

There is also an advantage in having an actuating lever separate and apart from the spring. When the spring itself is used, the bow or loop of the spring, which actuates the lever, is easily sprung or warped by the rough handling to which game traps are necessarily subjected, and the jaws of the trap are not held so tightly together. Moreover, the trap will not stay flat as readily as when an independent lever is used. All of these defects the Gibbs trap seems to obviate.

The defendant cites against claim 16 a number of patents of which the most important are the Rasmussen patent, supra, and the Underwood patent No. 834,539 of 1906. The closing lever of the Rasmussen trap is not mounted at one side, and hence it does not possess the important advantages of such a construction. The Underwood trap, on the other hand, while it does not claim a location of the pivotal mounting at one side of the trap, does show such a construction; but in this trap, the springs themselves are extended to embrace and actuate the jaws and hence the advantages of an independent lever are lost. It consequently appears that one of the two important elements in claim 16 is suggested by the Rasmussen patent and the other by the Underwood patent. The question of invention depends upon whether it was patentable in

the state of the art to combine these two elements together with the other elements of claim 16 to make the trap covered by the patent in suit. The Patent Office held that it was invention, and after careful consideration of the evidence and of the patents cited, it does not appear that the presumption of invention arising from the issuance of the patent has been overcome.

The practical advantages of the new device, as compared with prior traps on the market, has been demonstrated. The adoption of substantially the same trap by the Triumph Trap Company is itself strong evidence of invention. The evidence leaves no doubt that the Triumph Trap Company was an important manufacturer of animal traps and that Green was a person skilled in the art. It had been long and successfully engaged in the manufacture of traps, and its superintendent had been closely identified with it both before and after the six months' interval during which he was associated with Gibbs. It was endeavoring to devise a practical animal trap, involving the use of a coiled spring, as distinguished from a leaf spring, which during the period of the great war was more difficult to obtain. Green attempted to solve the problem. He was familiar with the Underwood, Rasmussen, and other patents, but failed to find a solution until he had become familiar with the complainant's trap. The · Gibbs invention was certainly not obvious to him.

The defendant contends that the presumption from the issuance of the patent is not entitled to its customary weight in this case, since the Underwood patent was not cited by the examiner in the patent in suit. It should be noted that the claims in issue relate only to a portion of the structure shown by the drawings. The trap is a double jaw trap and consists of a main trap covered by the claims in issue and a secondary trap by which the body of the animal is caught. When Gibbs patent No. 1,458,-286, hereinafter discussed, was first applied for, it contained claims referring to the primary trap only, and additional claims referring to the complete structure. The Examiner cited the Rasmussen, Underwood, and other patents against the first class of claims. Thereupon the applicant dismissed all but one of the claims relating to the main trap only, and subsequently, added claims 14, 15, and 16 as amendments to the application which culminated in the patent in suit. When the Examiner discussed this patent, he cited Rasmussen, but failed to cite Underwood. The defendant asserts that this pro-

cedure was deceitfully adopted by the patentee so as to throw the Examiner off the track of the Underwood patent. The charge of fraud is not sustained. No misrepresentation is alleged or proved. The two applications were copending. The same Examiner handled both, and the second application bears a reference to the first. Moreover, although the Examiner did not cite the Underwood patent against claim 16, he did have in mind the distinctive feature of claim 16, to wit, the location of the pivot mounting of the closing lever, and he specifically cited not only the Rasmussen patent, but also the patents of Donlon and Whitney, each of which show a lever pivotally mounted to one side of the treadle. These two last-mentioned patents are not marked as exhibits but have been filed with the evidence in the case at bar. It is clear, therefore, that the Examiner had in mind the very point for which Underwood was cited in the prior application.

The patentability of claim 16 was necessarily passed upon a second time by the same Examiner when, upon the motion of Green, an interference based thereon was declared between his application and the Gibbs patent. The Examiner had cited Underwood against the Green application, but he nevertheless decided that Green was entitled to the subject-matter of claim 16. It is held that claim 16 does not lack patentability.

[4] The further contention is made by the defendant that the patent in suit is void for double patenting on the ground that it covers the same subject-matter as the prior patent to Gibbs, No. 1,458,286, which was granted June 12, 1923, on an application filed September 24, 1919. This invention relates to improvements in multiple jaw traps and provides for an auxiliary jaw adapted to be released at the same time as the jaws of the primary trap so as to strike the animal caught therein, and either kill it or prevent its escape. As already stated, all of the claims for the main trap filed with the original application were withdrawn except one which became claim 10 in the patent as granted, and is as follows:

"10. An animal trap having in combination a pair of pivotally mounted jaws, a spring consisting of two separated helices for closing said jaws, a shaft passing through the helices, and bearings for the ends of the shaft and for the portion intermediate the helices."

This claim in the defendant's opinion is for the same invention as that covered by claim 16 in the patent in suit, and the latter, if allowable at all, should have been made in

the prior patent. It is apparent that the two important elements in claim 16 are not found in claim 10, to wit, a closing lever embracing the jaws and the pivotal mounting of such lever at one side of the trap intermediate the jaw pivots. But the drawings which accompanied the first patent nevertheless do disclose both elements, for the trap depicted by them is so constructed. Under these circumstances, the defendant says that the vice of double patenting exists.

The defendant asserts that there are only two lawful methods whereby a later issued patent may contain broader or more generic terms than an earlier patent, viz., one where several independent inventions have been disclosed in the original application, which necessitates the filing of divisional applications, and the other by a reissue. It is not clear that claim 16 of the later patent is of a broader character than the invention disclosed by the earlier, but assuming this to be the case, the rule enunciated by the defendant is not supported by the weight of authority. The defendant relies particularly upon Union Typewriter Co. v. L. C. Smith & Bro. (C. C.) 173 F. 288, in the Third Circuit, affirmed (C. C. A.) at 181 F. 966. But the case does not support the theory thus broadly stated. It does not limit the grant of a broad patent subsequent to the issue of one upon narrower lines to cases in which the two patents bear a divisional relation to each other although it cites such a relation as one of the circumstances which justify such action. There is, moreover, an important difference between the facts in that case and the case at bar. Although the two patents were copending in the former case, it was not until three months after the issuance of the first patent that the applicant sought to introduce the claim in question in the second patent. An abandonment of the matter subsequently claimed had therefore already taken place, and it was too late then to claim what had already been disclosed by the first application. Hence it was held that the patentee's omission could be corrected only by a reissue.

In the case at bar, on the contrary, claim 16 of the patent in suit was filed as an amendment on September 27, 1922, when the first patent was still pending. The first patent was not issued until June 12, 1923. The case at bar therefore falls squarely within the rule laid down in the cases involving the patents of the Thompson-Houston Electric Company in the Second and Sixth Circuits, also cited by the defendant. For instance, it is held in Thompson-Houston Electric Company v. Elmira & H. Ry. Co. (C. C. A.) 71 F. 396, 404, that an inventor by describing an invention in a patent granted to him, does not necessarily preclude himself from patenting it subsequently when the applications for both patents are pending together in the Patent Office. The court said:

"His omission to claim what he describes may operate as a disclaimer or an abandonment of the matter not claimed; but it has no such effect when it appears that the matter thus described, but not claimed, was the subject of a pending application in the Patent Office by him for another patent."

See, also, Thompson-Houston Electric Co. v. Union Ry. Co. (C. C. A.) 86 F. 636; Thompson-Houston Electric Co. v. Jeffrey Mfg. Co. (C. C. A.) 101 F. 121; Thompson-Houston Electric Co. v. Ohio Brass Co. (C. C. A.) 80 F. 712; Thompson-Houston Electric Co. v. Black River Traction Co. (C. C.) 124 F. 495; Id. (C. C. A.) 135 F. 759.

[5] Divisional applications are referred to in some of these opinions, but the grant of a subsequent patent for matter disclosed but not claimed in a prior patent is not limited to cases in which divisional applications are necessary under the rules of the Patent Office. For instance in 71 F. 396, one of the two patents under consideration was a branch of a divisional application, while the second patent was independent and not so divided; yet the second patent was held valid. The rule is not restricted by the technicalities pertaining to divisional applications. It is directed broadly against the issuing of two patents for the same invention. It is stated clearly in the Eighth Circuit in the Century Electric Co. v. Westinghouse Elec. & Mfg. Co. (C. C. A.) 191 F. 350, wherein at page 352 it is said of copending applications:

"An inventor, it is true, may not sustain a subsequent patent for an invention actually claimed and secured in a former patent; * * * nor may he sustain a subsequent patent for an essential element of an invention secured by a former patent without which that invention would not have been patentable. * * * But one who makes several patentable inventions * * * may have as many separate valid patents as he makes patentable inventions. His is the option to secure all these inventions by a single patent, or by many patents, and the fact that he describes all of them in his application or specification for an earlier patent to secure one or more of them, does not invalidate a subsequent patent to him for those inven-

tions there described but not claimed, * * * and a patent for an invention does not avoid a later patent for an improvement thereon, nor does a patent for an improvement avoid a later patent for the invention on which the improvement is made. The sum of the whole matter is that while an earlier patent avoids a later patent to the same patentee for the invention claimed and secured by the former it does not invalidate a later patent to him for a distinct, different and separable invention, whether generic or specific, whether an original machine or process, or both, or an improvement thereon which is not actually claimed or secured by the earlier patent."

See, also, Vapor Car Heating Co. v. Gold Car Heating Co. (D. C.) 296 F. 188, 195, affirmed (C. C. A.) 16 F. (2d) 194; Palmer v. J. E. Brown Mfg. Co. (C. C. A.) 92 F. 925; Toledo Plate & Window Glass Co. v. Kawneer Mfg. Co. (C. C. A.) 237 F. 364.

Moreover, it seems that in the judgment of the Patent Office, the necessity for a divisional application existed when the application for the first Gibbs patent was pending. The drawings which accompanied the patent showed two differing constructions of the closing mechanism of the primary trap. The closing device in some of the drawings consisted of a tangential extension of the spring itself, while in others, a closing lever independent of the spring was shown. The Patent Office held that two sets of claims, each set covering a different closing device, could not stand together in the same patent, and that division was necessary. Claim 10 was placed by the Patent Office in that class of claims which covered a closing device consisting of an extension of the spring. After this ruling was made, the applicant no longer pressed the claims which described an independent closing lever, and did not file a divisional application. But the patent in suit having been subsequently applied for, claims 14, 15 and 16, showing an independent closing lever, were added thereto. Under the rulings of the Patent Office, claim 16 could not have been united with claim 10. It could only be filed in a divisional application or as was actually done, in an independent patent. This procedure is within the rule of the cases cited.

It is conceivable that a second patent covering subject-matter described but not claimed in a copending prior patent, may be so long delayed through the fault of the patentee that in the interval, rights may be acquired by other persons which the patentee will be estopped to deny. But there is no ground for an estoppel under the circumstances of this case since the defendant began to imitate the Gibbs trap long before the first Gibbs patent was issued. The defense of double patenting is without foundation.

Finally the defense is made that the defendant's trap does not infringe the patent in suit, since it is said the closing lever is not pivotally mounted between the jaw pivots. The lever in the Gibbs trap is provided at the lower end with two lugs, each of which is provided with a hole through which the pivot pin passes at one of its ends. At its other end, the pivot pin is attached to the base of the trap. Thus the pin is held fast as an axis or pivot on which the lever turns when moved by the coiled spring encircling it. The lever in the defendant's trap is similarly provided with perforated lugs to which the pivot pin is made fast. The spring encircles and supports the pin. The defendant claims, therefore, that its lever is spring supported and is not pivotally mounted. The expression "to pivot," however, means "to turn or swing on a pivot." In the case of each trap, it is true that the lever is pivotally mounted. While the pin in the Gibbs trap is stationary, and the lever turns thereon, the pin in the defendant's trap turns with the lever itself, being supported by the coil spring as a bearing. In each case, the purpose is to hinge the lever arm so as to permit it to swing freely as distinguished from the riveted connection of the leaf spring secured to the base in the traps of the prior art. The mechanical equivalency of the two devices is clear, and infringement is established.

Indeed, the defense of lack of infringement seems to be an afterthought on the part of the defendant. In his application for a patent on the defendant's trap, Green refers in numerous places to the pin or rod as the pivotal support for the actuating lever, and to the coiled spring as forming a housing or bearing for the pivotal supporting member of the lever. Moreover, in the interference proceedings which originated at the instance of Green and defendant's attorney, after the institution of the case at bar, Green added claims 14, 15, and 16 of the patent in suit to his application as covering his trap, wherein as appears above, the closing lever is described as pivotally mounted. Under these circumstances, his testimony in the pending case that his trap is not pivotal-

ly mounted is not persuasive. Infringement is made out.

A decree will be signed in accordance with this opinion.